

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUN 2 7 2013

~~Madsen C.J.~~
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 27, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| KING COUNTY, DEPARTMENT OF DEVELOPMENT AND ENVIRONMENTAL SERVICES, an executive agency, | ) ) ) ) | No. 87514-6 |
| | ) | En Banc |
| Petitioner, | ) ) | |
| v. | ) ) | |
| KING COUNTY, a Washington municipal corporation, JEFFREY L. SPENCER, a single man, and RONALD A. SHEAR, a single man, | ) ) ) ) ) | |
| Respondents. | ) ) | Filed _____ JUN 2 7 2013 |

C. JOHNSON, J.—This land use case requires us to determine how the King County Code provisions allow uses to vest as nonconforming uses. This case began as a challenge to an agency order declaring the use of the property was not compliant with King County zoning ordinances. The applicants' challenge was based on the assertion that the use was established before revisions to the zoning ordinances characterized the use as nonconforming and, thus, requiring a permit.

This case also presents the issue of what effect a nonpermitted activity has on a later claim to a preexisting use when a permit was required for the activity

asserted as support for a preexisting use. The hearing examiner found for the landowner on all relevant issues, but the decision was reversed by the superior court. The Court of Appeals reversed the superior court, and we now reverse the Court of Appeals and hold that the landowner's use was not established within the meaning of the King County Code.

## FACTS AND PROCEDURAL HISTORY

The 10-acre parcel of land at issue in this appeal lies in the Green River Valley and is zoned agricultural. The landowner, Jeffrey Spencer, allowed Ronald Shear, who operates a business (BRC), which processes organic materials into animal bedding and fuel, to rent the property.[1]

In 2003, Shear was operating a similar processing facility on a one-acre parcel near Spencer's parcel. In October, the two entered into an oral "lease" agreement whereby Shear began bringing equipment and materials onto Spencer's parcel for later processing. This operation fit under the definition of an "interim recycling facility" under the then-existing King County Code and required no use-specific permitting. Shear's activities on the parcel increased throughout 2004, although no actual grinding or processing had begun. Then, in September 2004,

---

[1] For ease of reference, these parties will all be referred to as Shear unless otherwise noted.

No. 87514-6

King County amended its code to require permitting for operations such as Shear's, classifying them as "materials processing facilities."[2] There is no dispute that Shear's current operations constitute a materials processing facility under the code. Nor is it disputed that actual grinding of the organic materials had not commenced before the code revisions. However, the hearing examiner did find that Shear's operations were continually expanding during the time leading up to the zoning revisions and that the business required three stages for full implementation: site preparation, grinding of raw materials, and transfer of those materials off site. The hearing examiner also found that prior to the zoning change, "all of the essential first-stage site preparation activities were underway." Clerk's Papers (CP) at 31.

Shortly after the zoning change, in late 2004 or early 2005, Shear began actual grinding of organic materials. In response to complaints from a nearby landowner, the Department of Development and Environmental Services (DDES) began to investigate Shear's operations. Apparently, DDES made multiple informal contacts before ultimately filing an administrative notice and order on October 9, 2006. The administrative order found two violations: the operation of a

_____

[2] The King County Code defines a "[m]aterials processing facility" as "[a] site or establishment, not accessory to a mineral extraction or sawmill use, that is primarily engaged in crushing, grinding, pulverizing or otherwise preparing earth materials, vegetation, organic waste, construction and demolition materials or source separated organic materials and that is not the final disposal site." King County Code (KCC) 21A.06.742.

3

materials processing facility in a critical area without permit and grading in critical areas (flood hazard area and wetlands) without proper permitting.

Shear appealed the administrative order, setting off long and contentious proceedings not relevant here. On January 28, 2010, the hearing examiner filed his report and decision, which was largely (but not completely) in favor of Shear. In relevant part, the hearing examiner interpreted the following language of the King County Code as expressly recognizing that preexisting uses could vest even if not in full operation:

> **21A.06.800 Nonconformance.** Nonconformance: any use, improvement or structure established in conformance with King County rules and regulations in effect at the time of establishment that no longer conforms to the range of uses permitted in the site's current zone or to the current development standards of the code due to changes in the code or its application to the subject property.

> **21A.08.010 Establishment of uses.** The use of a property is defined by the activity for which the building or lot is intended, designed, arranged, occupied, or maintained. The use is considered permanently established when that use will or has been in continuous operation for a period exceeding sixty days. A use which will operate for less than sixty days is considered a temporary use, and subject to the requirements of K.C.C. 21A.32 of this title. All applicable requirements of this code, or other applicable state or federal requirements, shall govern a use located in unincorporated King County.

KING COUNTY CODE (KCC) 21A.06.800; KCC 21A.08.010. Thus, the hearing examiner reasoned, Shear's use as a materials processing facility could be a

4

preexisting use despite the fact that actual grinding had not begun prior to the zoning change. The hearing examiner also found that the King County Code required further actions by the county to designate flood hazard areas, and because it had yet to complete the process, the code contained an unenforceable flood hazard standard. Finally, the hearing examiner found that Shear had engaged in unlawful grading, albeit not in a critical area.[3]

Importantly, the hearing examiner recognized that Shear's use had and would likely continue to expand and required Shear to obtain a conditional use permit for any expansion. He determined that Shear's use as of September 2004 (the month King County amended its code) was the baseline level of permitted use. Any expansion after that date would require a conditional use permit. However, given the contentious nature of the proceedings, the hearing examiner also recognized that DDES might abuse the conditional use permit process and imposed several restrictions applicable to the permitting process. He ruled that DDES was not allowed to use the permit process to directly or indirectly prohibit a viable materials processing facility. Moreover, subject to small exceptions, it could not require any further studies on the wetland or flood hazard area issues.

---

[3] There were also findings related to a wetlands issue, but that issue is not part of the current appeal.

No. 87514-6

DDES filed a timely appeal under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The King County Superior Court reversed the hearing examiner on all issues. The court held that the hearing officer's determination that actual grinding had not occurred "preclude[d]" his finding of a nonconforming use because the code required a use to be "'in operation'" for 60 days in order to be established. CP at 664. It also held that the code did contain an enforceable flood hazard area standard and that the hearing examiner acted outside of his jurisdiction in imposing conditions. Shear timely appealed this decision, and in a published decision, the Court of Appeals, Division One reversed the superior court and reinstated the hearing examiner's decision. *King County Dep't of Dev. & Envtl. Servs. v. King County,* 167 Wn. App. 561, 273 P.3d 490 (2012). We granted discretionary review. *King County Dep't of Dev. & Envtl. Servs. v. King County,* 175 Wn.2d 1009, 287 P.3d 594 (2012).

ANALYSIS

LUPA sets forth six standards for relief from an administrative land use decision. RCW 36.70C.130. As relevant here, relief will be granted if the hearing examiner's decision was "an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b). An appellate court stands in the same shoes as

6

the superior court and reviews the administrative record. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751, 49 P.3d 867 (2002). Alleged errors of law are reviewed de novo and questions of fact are reviewed for substantial evidence. *City of University Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001).

*Nonconforming Use*

Generally, a nonconforming use is a use that "lawfully existed" prior to a change in regulation. Despite that the use may no longer be permitted, it is allowed to continue due to the fairness and due process concerns of the landowner. *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998). The doctrine is "intended to protect only those uses which were legally established before" the change in regulation. 1 ROBERT M. ANDERSON, AMERICAN LAW OF ZONING § 6.11 (Kenneth H. Young ed., 4th ed. 1996). The landowner has the burden to prove that (1) the use existed prior to the contrary zoning ordinance, (2) the use was lawful at the time, and (3) the applicant did not abandon or discontinue the use for over a year prior to the relevant change. *McMilian v. King County*, 161 Wn. App. 581, 591, 255 P.3d 739 (2011).

The analytical focus of the dispute here centers on the provisions and language of the King County Code, which regulates zoning and the allowable uses

of land. The parties disagree over the interpretation of several sections of the King County Code.

The first disputed section of the code defines a nonconforming use as "any use, improvement or structure *established* in conformance with King County rules and regulations in effect at the time of *establishment* that no longer conforms to the range of uses permitted in the site's current zone." KCC 21A.06.800 (emphasis added). Importantly, the past-tense form of the word "establish" is used twice in this provision in reference to the use, which shows that the use must already be established in order to be considered a nonconforming use. As discussed below, this approach tracts the analysis employed by our cases discussing preexisting uses. *See, e.g., Anderson v. Island County*, 81 Wn.2d 312, 501 P.2d 594 (1972) (finding no nonconforming use where landowner had intent to operate cement batching plant but had not actually begun operations).

Shear's argument, which the Court of Appeals found convincing, focuses on another section of the code that provides, "The use of a property is defined by the activity for which the building or lot is intended, designed, arranged, occupied, or maintained." KCC 21A.08.010. Although these words, especially "'intended,'" arguably suggest that prospective uses are allowed, this sentence is about "'defin[ing]'" uses, not selecting a point in time at which they vest. Here, for

example, the hearing examiner found that Shear "intended, designed, arranged, occupied, or maintained" the property in a manner that falls under the code's definition of a "materials processing facility." Thus, because Shear intended to operate a materials processing facility, that is the use he must prove was established. However, this sentence in the code provides little guidance because it says nothing about *when* a use is established but instead provides guidance as to how to define a use in relation to activities occurring on the land, especially where some activities might be unregulated for one use but regulated for another.

This interpretation is further confirmed by the next two sentences of the code, which provide further guidance on defining the use—specifically, whether it is temporary or permanent. These sentences state that a "use is considered permanently established when that use will or has been in continuous operation for a period exceeding sixty days. A use which will operate for less than sixty days is considered a temporary use." KCC 21A.08.010. Shear focuses on the word "will" to argue that prospective uses can be "established" within the meaning of the code. As discussed above, however, this section is about defining uses, not about when they are established.[4] As a condition precedent to determining whether a use is

---

[4] We recognize that the section is entitled "Establishment of uses" but is in a separate chapter of the code than the definition of a "nonconforming use." In context, we read this section

permanent or temporary, that use must exist. A use exists when it is "established" within the meaning of KCC 21A.06.800. In this context, "will" speaks to existing established uses that have not been in operation for 60 days but are expected to continue for more than 60 days.

For example, suppose a landowner wanted to open a hotel and obtained approval for all the necessary permitting before that use is subsequently prohibited. The permit approval would "establish" the use even though occupation of the facility may not have started, and the use would be a permanent use because it "will" be in operation for more than 60 days. Similarly, in Shear's case, if he had been fully processing the materials for 15 days, his use would have been established within the meaning of the code and would have been permanent because it eventually would have been in continuous operation for 60 days. But, again, the code requires establishment as a condition precedent to the creation of a nonconforming use. Thus, we conclude that the "will" in KCC 21A.08.010 does not have any bearing on when a nonconforming use is "established" but instead refers to whether uses that are already "established" in accordance with KCC 21A.06.800 are considered "permanent" or "temporary." Because Shear had not

---

as related to establishing what the use is, not the point in time in which the use is "established" within the meaning of KCC 21A.06.800.

completed all three stages as determined by the hearing examiner, his use was not established within the meaning of the code prior to the zoning change.

This interpretation of the code is also consistent with our case law applying the nonconforming use doctrine. Nonconforming uses are disfavored, and we have repeatedly held that the doctrine is a narrow exception to the State's nearly plenary power to regulate land through its police powers. Consistent with the narrowness of this doctrine, we held in *Rhod-A-Zalea* that a landowner does not "vest" the entire code at the time the use is established, but that only the use itself is vested and a landowner must still comply with subsequent changes to the land use code not involving that specific use. *Rhod-A-Zalea*, 136 Wn.2d at 6-7. Thus, even where a nonconforming use was lawfully established, the rights of a landowner may still be limited to only what is required to protect the landowner's due process interests. Nonetheless, the use must actually exist before it can be termed a "preexisting use" and a due process right attaches to a landowner.

In another case, the landowner moved its gravel operations to a newly purchased track of land with the intent of also moving its cement batching plant to the same location. Several months later, the county amended the zoning code to designate the land as residential. Soon thereafter, the landowner began construction of a cement batching plant. This court held that a nonconforming use did not exist

11

for the cement batching plant because that use did not precede the zoning change. We stated that "mere purchase of property and occupation thereof are not sufficient factors, either severally or jointly, to establish an existing nonconforming use" and that the use "'must exist somewhere outside the property owner's mind.'" *Anderson*, 81 Wn.2d at 321 (quoting *Cook v. Bensalem Twp. Zoning Bd. of Adjustment*, 413 Pa. 175, 196 A.2d 327, 330 (1963)). The landowner might have established the gravel operation as a preexisting use because it "existed" prior to the zoning change. He could not, however, prove that the intended cement batching plant was established so as to be a nonconforming use. That same reasoning applies in this case.

Here, Shear took similar actions to that of the landowner in *Anderson*. He obtained rights to the land (although not a fee interest), stored some materials on the property, and expressed an intent to take further action to commence a recycling operation but had not commenced actual recycling. When the regulations changed, the "processing" component of his materials processing facility had not begun. Allowing some contemplated future use to be considered a "preexisting" use would be contrary to the requirements of the preexisting use doctrine as defined by our cases, and we find no language in the King County Code that would allow a landowner to create a preexisting use merely by undertaking preparatory

steps with a plan to take action at some unknown time in the future. Neither the King County Code nor our cases recognize such activities as sufficient to establish a vested nonconforming use. Shear has not met his burden to show his use was established.

As further support for this conclusion, this case also presents the situation where Shear's preparatory work was performed without the required permits. Importantly, Shear did not appeal the hearing examiner's conclusion that permits were required for the grading performed before the code revisions. The hearing examiner recognized this failure and ordered Shear to apply for and secure those permits, albeit, after the fact. That ruling, however, has the analysis somewhat backward. A component of establishing a preexisting use is that the use be lawfully established. This rule has been consistently recognized by our cases. *Rhod-A-Zalea*, 136 Wn.2d at 6 (stating rule that use must have "lawfully existed" prior to becoming a nonconforming use); *McMilian*, 161 Wn. App. at 590-91 (holding that petitioner's status as a trespasser precluded a finding that the use lawfully existed, and therefore the use could not be a nonconforming use); *First Pioneer Trading Co. v. Pierce County*, 146 Wn. App. 606, 614, 191 P.3d 928 (2008) (discussing petitioner's failure to obtain proper permitting and finding that petitioner had not established a nonconforming use). What these cases recognize is that when a

landowner utilizes unlawful methods to establish a nonconforming use, that unlawfulness precludes a subsequent finding of a lawful nonconforming use. Because Shear has not appealed the ruling that permits were required, he cannot meet the required showing that his use lawfully existed.[5]

## CONCLUSION

We reverse the Court of Appeals' reinstatement of the hearing examiner's decision and hold that Shear's use was not established within the provisions of the King County Code as a lawful preexisting use.

---

[5] Because we hold that the materials processing facility was not a lawful nonconforming use, we do not need to resolve the issues regarding the hearing examiner's imposition of conditions. The hearing examiner's conditions were imposed as part of the conditional use permit process, which was necessarily predicated on Shear having a nonconforming use. Thus, we need not address whether the hearing examiner exceeded his authority or whether the code contains an enforceable flood hazard zone standard.

No. 87514-6

_[signature]_

WE CONCUR:

_[signature]_ Madsen, C.J.

_[signature]_ Owens, J.

_[signature]_ Fairhurst, J.

_[signature]_

_[signature]_ Stephens, J.

_[signature]_ Wiggins, J.

_[signature]_ González, J.

_[signature]_ Gordon McCloud, J.

15