# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| GRANDVIEW NORTH, LLC, a Washington limited liability company, | ) ) ) ) | No. 69639-4-I |
|  | ) | DIVISION ONE |
| Appellant/ Cross Respondent, | ) ) ) |  |
| v. | ) ) |  |
| CITY OF BURLINGTON, a municipal corporation, | ) ) ) | UNPUBLISHED |
|  | ) ) | FILED: February 18, 2014 |
| Respondent/ Cross Appellant. | ) ) ) |  |

2014 FEB 18 AM 10: 11

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

Cox, J. — Grandview North LLC appeals the superior court's order affirming the City of Burlington's decision to deny Grandview's land use application. Grandview contends that the denial was not supported by substantial evidence, was an erroneous interpretation of the law, was an erroneous application of the law to the facts, and violated its constitutional right to equal protection. The City cross-appeals the superior court's order denying its motion to dismiss.

Because Grandview fails in its burden to show it is entitled to relief under LUPA, we affirm. Since it is unnecessary to reach the City's arguments, we do not.

In February 2007, Grandview submitted a proposal to develop a site located on Burlington Boulevard near the Costco Drive intersection. Grandview sought to build an oil change facility called "Oil Can Henry's."

Gibson Traffic Consultants prepared two traffic impact analyses for Grandview. The City retained Garry Struthers Associates ("GSA") to conduct peer reviews of these reports. GSA identified errors in Gibson's analysis and problems with Grandview's proposal. It recommended that the City deny the proposal.

Upon receiving the permit application, the City conducted an environmental review. The City determined that the project may have a significant environmental impact. It issued a "Determination of Significance and Request for Comments on the Scope of an Environmental Impact Statement."

In July 2008, Grandview brought a LUPA petition and complaint for damages challenging the issuance of the determination of significance. The City argued that the petition was premature because it had to be consolidated with the land use decision, which had not yet been made. The superior court dismissed the petition in March 2009.

In April 2009, the City issued a "Draft Environmental Impact Statement." It identified adverse impacts on traffic operations and safety issues. It also noted that the problem at this location is "seriously exacerbated" by the fact that there is an existing business that is "directly affected" by Grandview's proposal. Specifically, it noted that Grandview proposed to use a corner of the adjacent property to the south where there is a bicycle shop business. This property is owned by Burlington Boulevard LLC ("B.B. LLC").

2

Grandview redesigned the project in September 2010 so that it was limited to encroaching on an easement Grandview shared with B.B. LLC between their respective properties ("revised design"). This design was also problematic. But Grandview did not submit any further revisions to the project.

Several months later, the City issued its "Final Environmental Impact Statement." This identified potential safety and traffic impacts of the proposal, and it proposed alternatives, such as relocating neighboring businesses or redesigning the intersection.

In February 2011, the Planning Commission considered Grandview's proposal. At the meeting, the Planning Director expressed concerns over both the original design and the revised design. The Planning Commission denied Grandview's proposal and made its findings of fact and conclusions of law.

Grandview appealed the Planning Commission's decision to the Burlington City Council. By its written decision dated May 12, 2011, the City Council affirmed the Planning Commission's denial. It made its findings of fact and conclusions of law.

Grandview brought this LUPA action in April 2011, claiming errors related to the City's decision to issue a determination of significance, and the City's decision to deny the development application. Grandview also alleged that the City's actions violated 42 U.S.C. § 1983.

In superior court, the City moved to dismiss for failure to serve B.B. LLC as an indispensable party. The superior court denied this motion.

After a hearing, the superior court entered its own findings of fact and conclusions of law and an order affirming the decision of the City Council.

Grandview appeals. The City cross-appeals.

## LAND USE PETITION ACT

Grandview argues that the superior court erred when it denied relief under LUPA by affirming the City's denial of Grandview's land use application. We hold that Grandview fails in its burden to show it was entitled to relief.

LUPA is the exclusive means of judicial review of land use decisions.[1] RCW 36.70C.130 outlines the standards for the superior court to grant relief requested by a LUPA petitioner.[2] The court may grant relief only if the party seeking relief has carried the burden of establishing that one of six standards has been met.[3]

"An appellate court stands in the same shoes as the superior court and reviews the administrative record."[4] Alleged errors of law are reviewed de novo and questions of fact are reviewed for substantial evidence.[5] When reviewing a decision under LUPA, an appellate court "'must give substantial deference to

---

[1] RCW 36.70C.030(1).

[2] RCW 36.70C.130(1).

[3] Id.

[4] King County, Dep't of Dev. and Envtl. Servs. v. King County, 177 Wn.2d 636, 643, 305 P.3d 240 (2013).

[5] Id.

both the legal and factual determinations of a hearing examiner as the local authority with expertise in land use regulations.'"[6]

Grandview argues that the following four subsections of RCW 36.70C.130(1) warrant relief in this case:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> . . .
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

*Substantial Evidence*

Grandview argues that the City's decision to deny the land use application is not supported by substantial evidence when viewed in light of the whole record. It argues instead that the evidence supports its proposal, because it shows that the project would not have a significant impact on traffic and would comply with "level of service" standards. We conclude that substantial evidence supports the City's denial.

"Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the

---

[6] Durland v. San Juan County, 174 Wn. App. 1, 12, 298 P.3d 757 (2012) (quoting Lanzce G. Douglass, Inc. v. City of Spokane Valley, 154 Wn. App. 408, 415-16, 225 P.3d 448 (2010)).

declared premise is true."[7] When reviewing a challenge to the sufficiency of the evidence supporting a land use decision, a court views facts and inferences "in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority . . . ."[8] Doing so "'necessarily entails accept[ing] the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences.'"[9]

Here, the City has prevailed in all forums to date.

In its written decision denying Grandview's application, the City Council made 19 findings of fact and 8 conclusions of law. Generally, the findings discussed both the original and revised designs and the problems related to each. In general, the City concluded that there were public safety issues, traffic issues, and adverse environmental impacts. It concluded that the original design encroached onto B.B. LLC's property and contained fatal design flaws. It concluded that the revised design did not comply with fire code requirements. Accordingly, the City Council concluded that neither design was acceptable.

When viewing the facts and inferences in a light most favorable to the City, we agree that there is substantial evidence in the record to show that: (1) both designs had safety issues; (2) both designs interfered with B.B. LLC's use of

---

[7] Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 829, 256 P.3d 1150 (2011).

[8] Id. at 828-29.

[9] Spokane County v. Eastern Wash. Growth Mgmt. Hearings Bd., 176 Wn. App. 555, 565, 309 P.3d 673 (2013) (alteration in original) (internal quotation marks omitted) (quoting State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)).

its property; (3) both designs would have an adverse impact on traffic; and (4) the revised design did not conform to fire code requirements. Thus, the permit denial was proper.

First, there is substantial evidence in the record that both designs submitted by Grandview had safety issues.

GSA's peer review stated that the proposed site plan "offers no sidewalk on the south side of the property forcing pedestrians to cross the driveway to access the site sidewalk." It stated that this "will create unnecessary conflicts between pedestrians and vehicles."

The City Engineer also expressed safety concerns about both designs. He stated that the original design's plan for access to the bike shop is "dangerous and unworkable." And he stated that the revised design is "unsafe" because "the skew angle of the intersection becomes extremely problematic, not in accordance with sound engineering design practices."

The final environmental impact statement stated that the proposal "will not allow for a protected movement for southbound left-turns as may be needed for safety." It indicated the original design was a "potentially dangerous design that requires drivers to cross the lanes of traffic at the signal," and it noted that there would "be an increased potential for traffic accidents."

The Assistant City Engineer also expressed concerns about safety with the revised design. He stated: "I sure wouldn't want to be a pedestrian trying to navigate around this skewed intersection. There are so many issues with this design." He stated that "[t]he left turn out is problematic, not safe." Additionally,

he identified several hazards of skewed intersections including: difficulty for older drivers to turn their heads for an adequate line of sight; a decrease in drivers' sight angle for observation of opposing traffic and pedestrian crossings; and difficulty for drivers to align their vehicles in the correct lane.

In sum, there was substantial evidence that both designs had safety issues.

Grandview argues that the record does not support the assertion that the design of the intersection was unsafe. But, for the reasons explained above, this appears to be nothing more than a disagreement over what the record shows.

Grandview also argues that a "glaring flaw" in this argument is that the intersection "is in existence at the present time." But as the City points out, Grandview does not propose to utilize the intersection in its current form. Accordingly, these arguments are not persuasive.

Second, there is substantial evidence that both designs would interfere with B.B. LLC's property. Grandview's original design would have encroached on B.B. LLC's main property. Grandview's revised design would affect that property as well as the access to a shared easement. In a letter to the City Council, B.B. LLC emphasized that either proposal would have an adverse impact.

The evidence showed not only that B.B. LLC's main property would be affected under the original design, but that B.B. LLC's property within the easement would also be affected under the revised design. The revised design, which the City received in September 2010, showed that Grandview's project

would be constructed on B.B. LLC's real property but entirely within a mutual

access easement located along the boundary line. B.B. LLC asserts that its

north property line runs approximately through the center of the easement.

Grandview does not dispute that part of the easement is located upon B.B. LLC's

property. This was also acknowledged by Grandview's representative who

stated:

> The majority of the driveway improvement remains on [Grandview's] property, and a small southern portion of the driveway does extend upon the adjacent bike shop property, but not beyond the legal extent offered to [Grandview] by the existing ingress, egress, and utility easement that is shared between [Grandview's] property and [B.B. LLC's] property.[10]

Moreover, the revised design affects B.B. LLC's access and use of the

easement. A representative for B.B. LLC stated the "biggest issue for [B.B. LLC]

is ingress/egress to their property" because the design would change the

configuration of getting in and out of the bike shop. B.B. LLC's representative

stated that if a street is constructed on the north boundary to replace the current

easement, it will "wall off [its] property from the north and make the property

virtually an island" leaving only a "small and inadequate" driveway.

In sum, there was substantial evidence that the proposal would affect B.B.

LLC's real property or interfere with its use of the easement.

Grandview argues that the proposal would not encroach upon B.B. LLC's

property, "but instead, would be confined to the easement that existed between

the two properties." This admission illustrates the problem. As the record

---

[10] Clerk's Papers at 2530.

shows, this design also affects B.B. LLC's access and use of the easement, a property right that Grandview cannot ignore. Thus, Grandview's argument is not persuasive.

Third, there is substantial evidence that Grandview's proposal would have adverse impacts on traffic.

The City's traffic consultant identified several problems. Initially, he noted that the skewed intersection and conflicting left turns would require the existing signal to operate in "split phase mode," which is "unacceptable in terms of providing efficient traffic circulation." He stated that split phase operations have a "deleterious impact on signal coordination in the corridor." Further, he noted a "cut through" route would be created through Costco to avoid the intersection.

In his second peer review, he noted additional problems. One issue was excessive "queuing." Specifically, he identified intersections where queue length exceeds the storage capacity of the lane. He stated that the storage lanes "must either be redesigned or the signal timings changed to eliminate the excessive queuing."

Another issue was "channelization." He explained that the site access roadway is "inadequate to accommodate the anticipated traffic demand." Additionally, he noted that the proposed access "does not meet the minimum arterial standard for intersection spacing."

He also identified issues with the "level of service" analysis conducted by Gibson, Grandview's consultant. He examined Gibson's conclusions that the

10

level of service complied with the standards, and he pointed to conflicting data. He also predicted drops in level of service.

Finally, he indicated that Gibson's analysis had deficiencies. This point was supported by a letter submitted from Transportation Solutions Inc., on behalf of Costco. That letter stated that the lack of queue data rendered Grandview's traffic analysis "fundamentally flawed and inadequate."

In addition to the City's traffic consultant's analysis, a representative from Costco also stated that there are operational issues associated with the proposed intersection.

In sum, there is substantial evidence that there would be adverse traffic impacts, including problems with circulation, queuing, channelization, intersection spacing, and changes to the level of service.

Grandview argues that its data shows that there is no impermissible decrease in level of service and that the City's assertion to the contrary is a "misinterpretation of the data." But inferences are taken in the light most favorable to the City, as it was the party that prevailed in the highest forum exercising fact-finding authority.[11] Thus, this argument is not persuasive.

Grandview also argues that the City's peer review failed to identify level of service deficiencies. But the City's consultant identified data that conflicted with Grandview's analysis. Additionally, he indicated that there would be specific drops in level of service. Moreover, he identified flaws in Grandview's analysis and conclusions.

---

[11] See Phoenix Dev., Inc., 171 Wn.2d at 828-29.

Further, as previously discussed, the City's consultant identified several other problems related to traffic, including queuing, channelization and circulation issues. Grandview fails to address any of these issues or explain why these concerns are immaterial. Thus, Grandview's argument about level of service is unpersuasive.

Fourth, there is substantial evidence that the revised design did not conform to fire code requirements. The City's Fire Chief stated that the fire apparatus access in the revised design is "insufficient throughout the site and does not conform to Fire Code requirements." The City Council concluded that this design "does not allow fire department access to the site, in violation of BMC Section 12.28.100 et. seq., and Art. 503.1 of the International Fire Code." This was also not addressed by Grandview.

Overall, the City's decision to deny Grandview's application was supported by substantial evidence.

Grandview makes several general arguments that the evidence was not sufficient to deny the application, but none of its arguments are persuasive.

First, Grandview "takes exception" to six findings of fact. But Grandview does not specifically challenge the sufficiency of these findings, nor does it make any argument related to them.[12] Grandview also does not specifically argue against any of the City's conclusions of law. Rather, Grandview argues generally, that the land use decision is not supported by substantial evidence.

---

[12] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining review of issues unsupported by argument).

But this general argument fails given the reasons previously discussed in this opinion.

Second, Grandview compares the evidence in this case to that presented in The Benchmark Land Co. v. City of Battle Ground.[13] But that case is distinguishable.

There, the city required Benchmark to improve an off-site road as a condition to approving its development application.[14] The city argued that the improvements were required by ordinance.[15] At issue in that case was the code provision requiring certain improvements as a condition for approval.[16]

The supreme court held that the condition for approval was not supported by substantial evidence and that the condition was invalid.[17] Its analysis centered on the facts that (1) the road did not meet standards even before development was proposed; (2) the improvements were not directly related to the development but rather would relieve a preexisting deficiency; and (3) traffic studies found that the development would have little to no impact on safety and operations on that section of the road.[18]

---

[13] 146 Wn.2d 685, 49 P.3d 860 (2002).

[14] Id. at 688-89.

[15] Id. at 689.

[16] Id.

[17] Id. at 688.

[18] See id. at 695.

Here, in contrast, this City did not condition Grandview's proposal on a specific improvement. Rather, the City proposed several alternatives when it recognized that Grandview's proposal was problematic. Additionally, the alternatives proposed by the City were related to concerns about the development, not about a preexisting deficiency. Moreover, evidence showed that Grandview's proposal would directly impact the safety, operations, and traffic at that particular intersection, and thus, the proposed alternatives were not related to an unaffected section of road. Accordingly, Grandview's reliance on Benchmark is not persuasive.

Third, Grandview argues that the City's approval of another project ("the Copeland project") also demonstrates that the denial of Grandview's project is not supported by substantial evidence. Specifically, it argues that the two projects involved the same intersection but that the approach taken by the City in the two projects was "vastly different." But comparing the City's approach in these two cases is not relevant to the analysis of whether there was substantial evidence to support the denial of Grandview's application. Rather, this argument is more appropriate for Grandview's constitutional argument, which we discuss later in this opinion.

Finally, Grandview argues that the City relied upon facts that are contrary to the record and that contradict each other. Grandview compares Finding of Fact No. 12, which acknowledges that the proposal was redesigned to not encroach on B.B. LLC's property, with Finding of Fact No. 16, which states that the project "proposes to take part of the property to the south without agreement

from the owner." But Grandview's argument misstates the City's findings. In finding No. 12, the City indicated that it was referring to the revised plan, and in finding No. 16, the City explicitly states that it is referring to "the earlier proposal, dated April 15, 2008." Accordingly, these findings do not contradict each other because they are referring to different designs. Additionally, both findings are supported by the record. Thus, Grandview's argument is not persuasive.

### Erroneous Interpretation of the Law

Grandview argues that the City erroneously interpreted the law when it "chose to ignore the mandates of [the Growth Management Act ("GMA")] and its duly adopted comprehensive plan and development regulations." But such an argument is relevant to an analysis of whether the City erroneously *applied* the law, which is discussed later in this opinion. For this standard, Grandview appears to be arguing that the correct interpretation of the GMA and the comprehensive plan is one that requires approval of a project showing compliance with level of service standards. We disagree.

Whether an administrative decision reflects an erroneous interpretation of the law under LUPA is a question of law that this court reviews de novo.[19] As previously noted, RCW 36.70C.130(1)(b) provides that the superior court may grant relief if "[t]he land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise."

---

[19] Dep't of Ecology v. City of Spokane Valley, 167 Wn. App. 952, 961, 275 P.3d 367, review denied, 175 Wn.2d 1015 (2012).

15

The GMA requires local jurisdictions to "adopt and enforce ordinances which prohibit development approval if the development causes the level of service . . . to decline below the standards adopted in the transportation element of the comprehensive plan, unless transportation improvements or strategies to accommodate the impacts of development are made concurrent with the development."[20]

Here, the City's comprehensive plan states:

> 2. The planned Level of Service is not to exceed Level of Service C except for the Burlington Boulevard corridor which is not to exceed Level of Service D. [ . . .]
>
> 3. Proposed projects that decrease the level of service below the planned level, because of their traffic contribution, shall be denied unless concurrent improvements are made to prevent a decrease in level of service below the planned level for that location. [ . . . ][21]

But, as the City points out, the comprehensive plan is adopted by ordinance.[22]

The City cites to Burlington's Municipal Code § 12.28.010(D) for the relevant law:

> The city of Burlington comprehensive transportation plan has adopted level of service "C" for all streets except Burlington Boulevard, for which a level of service "D" is adopted. If a traffic study meeting the specifications of the city engineer is prepared that demonstrates that the development causes the level of service to decline below the adopted standards, then transportation improvements or strategies to accommodate the impacts of development are required to be made concurrent with the

---

[20] RCW 36.70A.070(6)(b).

[21] Brief of Appellant at 4-5 (quoting City of Burlington Comprehensive Plan, Chapter 10).

[22] Brief of Respondent/Cross-Appellant City of Burlington at 3, 35-36.

development, or the development permit application shall be denied.[23]

Here, these provisions all stand for the same proposition. They all mandate denial of a development application if the level of service would fall below the adopted standards. But none of these provisions mandate the inverse—approval of a development application if the level of service would comply with the adopted standards. The plain language of these provisions does not compel the City to approve Grandview's application based solely on compliance with level of service standards. Grandview does not cite any other provisions to support its argument to the contrary.

Grandview relies on City of Bellevue v. East Bellevue Community Municipality Corp., where this court held that the Growth Management Act ("GMA") does not allow a city to circumvent its own statutorily required concurrency ordinance.[24] Grandview argues that "is precisely what the City has done in this case, although in reverse fashion."

There, the Bellevue City Code exempted certain types of projects from its concurrency requirements, justifying the exemption on the grounds that these projects would decrease traffic and provide necessary goods and services.[25] The Board invalidated the exemption and this court upheld the Board's

---

[23] Id. (quoting BURLINGTON MUNICIPAL CODE 12.28.010(D)).

[24] 119 Wn. App. 405, 407, 81 P.3d 148 (2003).

[25] Id. at 412-13.

decision.[26] This court stated that "concurrency is not a goal, it is a requirement."[27]

But, here, the City did not create an exception to the ordinance when it denied Grandview's application. The holding in <u>Bellevue</u> should not be extended to compel approval of a proposal for compliance with one requirement.[28] Grandview's reliance on that case is not helpful.

*Erroneous Application of the Law*

Grandview argues that the City erroneously applied the law to the facts. Specifically, it argues that its project complied with level of service standards and the City erred by failing to adhere to these standards. We disagree.

Under LUPA, a land use decision is a clearly erroneous application of the law to the facts, if "the reviewing court is left with the definite and firm conviction that a mistake has been committed."[29]

Here, we have no "definite and firm conviction" that the City erroneously applied the law for two reasons.

First, the City's peer review identified deficiencies with Grandview's analysis, disputed some of Grandview's conclusions, and pointed to specific drops in level of service. This report could be interpreted to show that

---

[26] <u>Id.</u> at 413-15.

[27] <u>Id.</u> at 414.

[28] 119 Wn. App. 405, 81 P.3d 148 (2003).

[29] <u>Citizens to Preserve Pioneer Park LLC v. City of Mercer Island</u>, 106 Wn. App. 461, 473, 24 P.3d 1079 (2001).

Grandview's plan does *not* comply with level of service standards. It could also show that Grandview's study did not meet the specifications of the city engineer.

Second, as previously discussed, the relevant law does not require approval of an application solely for compliance with level of service standards. Thus, even if Grandview's plan complied with these standards, the City did not erroneously apply the law when it denied Grandview's application for the reasons it did.

Grandview argues that it is "nonsensical" to conclude that a City is required to reject a proposal unless the standards are met, and at the same time the City is free to reject a proposal that complies with the standards. But the law expressly requires the City to reject a noncompliant proposal, and the law does not require the City to accept a proposal that complies with one requirement.[30] Thus, Grandview's argument is not persuasive.

Grandview compares its plan to the Copeland project, arguing that the Copeland project did not comply with level of service standards, yet it was approved. But even if this were true, this does not affect application of the law to the facts in this case. This argument is not analytically relevant.

*Equal Protection*

Grandview argues that the denial of its application violates the equal protection clauses of both the state and federal constitutions. Specifically, Grandview argues that by denying its permit application and by approving the Copeland project, the City intentionally treated Grandview differently from others

---

[30] See RCW 36.70A.070(6)(b).

similarly situated, and there is no rational basis for the difference in treatment. We disagree.

As an initial matter, the City moved to strike pursuant to RAP 17.4(d) and asks this court to overturn the trial court's order allowing supplementation of the record with documents related to the Copeland project. The City argues that the documents do not meet any of the LUPA standards for supplementation and they are not "newly discovered evidence." Grandview does not make any argument to this point in its reply. Based on the law, we grant the City's motion and disregard material that is not properly before us.

Generally, under LUPA, our review is limited to the record that was before the Board.[31] Supplementing the record in LUPA is limited by RCW 36.70C.120(2):

> (2) For decisions described in subsection (1) of this section, the record *may be supplemented by additional evidence only if* the additional evidence relates to:
>
> > (a) Grounds for disqualification of a member of the body or of the officer that made the land use decision, when such grounds were unknown by the petitioner at the time the record was created;
> >
> > (b) Matters that were improperly excluded from the record after being offered by a party to the quasi-judicial proceeding; or
> >
> > (c) Matters that were outside the jurisdiction of the body or officer that made the land use decision.[32]

---

[31] Kahuna Land Co. v. Spokane County, 94 Wn. App. 836, 841, 974 P.2d 1249 (1999).

[32] (Emphasis added.)

An appellate court will review the trial court's decision to introduce new evidence for abuse of discretion.[33]

These documents do not fall within any of the three exceptions under the LUPA statute. Accordingly, allowing the supplementation was not a proper exercise of discretion.

We disregard the evidence not properly before us. Grandview fails to point to any evidence outside of this supplemental record to support its claim that its equal protection rights were violated under either the state or federal constitutions. Accordingly, we reject this claim.

In sum, Grandview fails to demonstrate that it was entitled to relief under LUPA. The trial court properly dismissed Grandview's claims for relief.

**MOTION TO DISMISS**

The City properly conceded at oral argument of this case that it is not necessary to reach its cross-appeal regarding the denial of the motion to dismiss if we deny Grandview's request for relief on appeal. Accordingly, we do not reach the City's arguments on its cross-appeal.

**ATTORNEY FEES**

Both Grandview and the City ask for attorney fees pursuant to RCW 4.84.370. We grant the City's request.

RCW 4.84.370(1) provides that reasonable attorney fees and costs shall be awarded to the prevailing party on appeal. Further, RCW 4.84.370(2) provides that in an appeal of a land use decision "the county, city, or town whose

---

[33] Exendine v. City of Sammamish, 127 Wn. App. 574, 586, 113 P.3d 494 (2005).

decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal."

Here, the City's decision was upheld at the superior court. Accordingly, the City is the prevailing party and has the right to recover fees. We award such fees, subject to its compliance with RAP 18.1.

We affirm the superior court's decision denying relief under LUPA and affirming the decision of the City Council. We also grant the City's request for attorney fees, subject to its compliance with RAP 18.1.

Cox, J.

WE CONCUR: