**FILED**
**OCTOBER 31, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TOM LATTA, | ) | No. 39261-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHELAN COUNTY, a Washington municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| RIVERSIDE CABIN n/k/a RIVERSIDE CABIN AND LOFT LLC, a Washington limited liability company, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHELAN COUNTY, a Washington municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| CEA, LLC - RIVERSIDE VACATION HOME, LLC, a Washington limited liability company, | ) | |
| | ) | |

No. 39261-9-III
*Latta v. Chelan County*

| | |
|---|---|
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| CHELAN COUNTY, a Washington municipal corporation, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |
| SIMS KELLY, LLC, a Washington limited liability company, | ) |
| | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| CHELAN COUNTY, a Washington municipal corporation, | ) |
| | ) |
| Respondent. | ) |

PENNELL, J. — This is a consolidated appeal of land use decisions brought by four owners of short-term rentals (STRs)[1] located in the city of Leavenworth's Urban Growth Area (UGA).[2] In 2021, each of the appellants applied for permits to continue their STR

_____

[1] STRs are, essentially, furnished dwellings rented as a single lodging unit by an owner or operator to tourists or other guests, for a fee, for periods of less than one month. *See* Chelan County Code 14.98.1691 (defining "short-term rental"); *see also* Leavenworth Municipal Code 21.90.030 (providing a similar definition for "transient accommodation and/or lodging").

[2] By interlocal agreement, Chelan County applies the city of Leavenworth's zoning regulations to the Leavenworth UGA; thus, Leavenworth's city government apparently zones for the UGA as well as within the city limits. *See* Clerk's Papers at 400-01.

2

operations as existing nonconforming uses. Chelan County denied all four applications, and the county's hearing examiner affirmed. The STR owners [3] claim they are entitled to nonconforming use permits because either their STRs qualify as preexisting lawful uses or a 2021 county resolution provides broad amnesty for existing unpermitted STRs. Both arguments are mistaken. We therefore affirm the hearing examiner.

FACTS AND PROCEDURAL BACKGROUND

The primary question on appeal is whether the appellants lawfully operated their properties as STRs before the enactment of local zoning prohibitions. Each of the appellants began their STR operations sometime after 1999. By way of background, we note that the properties of all four appellants are located in the Leavenworth UGA and all the properties are zoned as low-density residential.

The city of Leavenworth first adopted an ordinance prohibiting STRs (referred to as "transient accommodation") in low-density residential zones on December 12, 1989. Ordinance 852 amended the portion of the Leavenworth Municipal Code (LMC) dealing with permitted uses in low-density residential zones, and provided that structures in such zones "not [be] used as a Bed and Breakfast or *Transient Accommodation*." Clerk's Papers (CP) at 1459 (emphasis added). A "transient accommodation" was defined as

---

[3] We alternatively refer to the appellants as either "appellants" or "STR owners."

3

"a dwelling unit[4] or motel room regularly rented to transient guests with a less than monthly rental period for each individual or group of guests." *Id.* at 1458.

Ordinance 852 granted a one-year amortization period, allowing preexisting transient accommodations or bed and breakfasts to temporarily continue operating. After that one-year period, ostensibly ending in December 1990, the ordinance provided that "any such non-conforming use shall be considered a zoning violation and shall be discontinued." *Id.* at 1459.

Ordinance 852's prohibition on transient accommodations in Leavenworth's low-density residential zones was originally codified at former LMC 18.20.020 (repealed by Ordinance 1589), and has persisted within the code in the decades since.[5]

---

[4] "Dwelling unit" was defined as "one (1) room or rooms connected together constituting a separate, independent housekeeping establishment for owner occupancy, rent, or lease, to one individual family on a monthly or longer basis, and which is physically separated from any other rooms or dwelling units which may be in the same structure and which contains independent cooking and sleeping facilities." *Id*.

[5] In 2017, the city of Leavenworth adopted Ordinance 1542, which clarified rules for the permitting of a bed and breakfast. *See* CP at 7147-56. None of the appellants' properties at issue here are operated as a "bed and breakfast," which is defined separately from a "transient accommodation." LMC 21.90.030. A bed and breakfast is the primary residence of the property owner, and the owner is required to live onsite during any guest's stay. LMC 18.52.120; *see also* CP at 1458, 7150-51, 7153. Nothing in Ordinance 1542 altered the existing prohibition on transient accommodations in low-density residential zones. To the contrary, the ordinance "reiterat[ed] [the City's] *existing prohibition* on the rental of entire dwellings as vacation rentals." *Id.* at 7155 (emphasis added).

Since at least 2000, Chelan County has adopted Leavenworth's land use designations for

the county's unincorporated urban growth area around the city. *See* Chelan County Code

(CCC) 10.12.030.[6]

Despite the prohibition on STRs in low-density residential zones beginning in the

early 1990s, enforcement appears to have been fairly lax. That began to change in recent

years. In April 2017, the city of Leavenworth stepped up enforcement actions against

STRs. *See* CP at 5468.

Chelan County subsequently established a task force to study the proliferation

of STRs. In 2021, after considering the task force's recommendations, Chelan County

adopted an STR code. *See* CCC 11.88.290. The STR code's purpose, in relevant part, is:

> to promote the public health and safety by protecting year-round residents'
> enjoyment of their homes and neighborhoods by minimizing the nuisance
> impact of short-term rentals on adjacent residences and by minimizing the
> detrimental impact of excessive short-term rentals on the affordable housing
> supply.

CCC 11.88.290(1)(C). In line with this purpose, the STR code places strict limits on

the number, location, and occupancy of STRs permitted in unincorporated Chelan

County, along with restricting the zones in which they can be operated, and providing for

---

[6] First enacted in 2000, this provision adopts the city of Leavenworth's
comprehensive plan and associated maps as they apply to the unincorporated portion
of the city's UGA.

a permitting process for new and existing STRs. *See* CCC 11.88.290(2)(A)-(D), (3)-(4).

The STR code also expressly "adopts the cities of Cashmere, Chelan, Entiat, *Leavenworth*, and Wenatchee land use regulations, development standards and land use designations, as they apply to [STRs]" insofar as those cities' codes already regulated STRs in each city's respective UGA. CCC 11.88.290(2)(C)(iv) (emphasis added). The county's STR code provides that "[a]ll" claims of existing nonconforming STRs within a UGA are "subject to joint review by the county *and* the affected city." CCC 11.88.290(2)(C)(iv)(b) (emphasis added).

Following Chelan County's adoption of its STR code, each of the four appellants applied for permits to continue their STR operations. There is no indication in the record that any of the STR owners' properties had ever previously been granted a use permit. After joint review by Chelan County and the city of Leavenworth, the county denied all four permit applications. The STR owners then appealed to the county's hearing examiner.

In arguments before the hearing examiner, the STR owners claimed that their properties should be treated as preexisting lawful uses and, alternatively, that the 2021 STR code forgave any prior illegality. The hearing examiner rejected these arguments. The examiner explained that none of the appellants' STR operations were ever lawful because STRs were not permitted in their respective zones of the Leavenworth UGA at

the time they began operating. Because the STR owners' operations were never at any point lawfully established, the examiner found they were ineligible to be allowed as nonconforming uses under the county's code.

Each STR owner petitioned in Douglas County Superior Court for review of the hearing examiner's decision. The owners then moved unopposed to consolidate their land use appeals. With the parties' consent, the superior court transferred the consolidated appeal to this court for direct review. *See* Stipulation and Order for Transfer of Case to Court of Appeals (Division III), *Latta v. Chelan County*, No. 22-2-00081-09, at 2-3 (Douglas County Super. Ct. Oct. 25, 2022).

## ANALYSIS

An aggrieved party may seek judicial review of a local government's land use decision under the Land Use Petition Act (LUPA), chapter 36.70C RCW. *See* RCW 36.70C.010; *City of University Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001). Under RCW 36.70C.150(1), as here, a superior court may transfer the judicial review of a land use decision to this court so long as the parties consent and agree the existing record is sufficient for review. When considering a LUPA appeal, we stand in the shoes of the superior court and review the record that was before the hearing examiner. *See McMilian v. King County*, 161 Wn. App. 581, 589, 255 P.3d 739 (2011).

The appellants argue the hearing officer's decision was contrary to fact and law, based on the appellants' alternate arguments that their properties either (1) qualified as legal nonconforming uses, or (2) were granted amnesty by the county's 2021 STR code. This type of challenge falls under RCW 36.70C.130(1)(b), (c), and (d). We review questions of law de novo and defer to factual findings so long as they are supported by substantial evidence. *See McGuire*, 144 Wn.2d at 647; *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998).

## Nonconforming use doctrine

The nonconforming use doctrine is a "narrow exception" to the rule that municipalities have "nearly plenary power" to zone for the public's health, safety, and welfare. *King County Dep't of Dev. & Env't Servs. v. King County*, 177 Wn.2d 636, 646, 305 P.3d 240 (2013). The nonconforming use doctrine allows some uses of property to continue, notwithstanding that the use violates later-enacted zoning regulations, if the use was "lawfully established" prior to the change in zoning law. *McMilian*, 161 Wn. App. at 584; *see Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6-7, 959 P.2d 1024 (1998); *see also* 36 MICHAEL F. CONNELLY, WASHINGTON PRACTICE: WASHINGTON LAND USE § 11:7, at 440 (2022 ed.) (noting nonconforming uses are "allowed to continue in spite of zoning regulations to the contrary" only if they "lawfully existed" prior to the change in zoning regulations).

The right to continue a nonconforming use encompasses only the right not to have the use *immediately* terminated in the face of a zoning ordinance that prohibits the use. *See Rhod-A-Zalea*, 136 Wn.2d at 6-7, 9-10, 12; *McMilian*, 161 Wn. App at 592. Cities and counties may eventually terminate nonconforming uses, so long as they provide landowners a reasonable amortization period. *See Rhod-A-Zalea*, 136 Wn.2d at 7-8; *McGuire*, 144 Wn.2d at 648-49; *Ackerley Comms., Inc. v. City of Seattle*, 92 Wn.2d 905, 920, 602 P.2d 1177 (1979). Nonconforming uses are disfavored, and the desirable policy of zoning legislation is to phase them out. *See Rhod-A-Zalea*, 136 Wn.2d at 7-8; *McMilian*, 161 Wn. App. at 592; *Open Door Baptist Church v. Clark County*, 140 Wn.2d 143, 150, 995 P.2d 33 (2000).

"[T]he initial burden of proving the existence of a nonconforming use is on the land user making the assertion." *Van Sant v. City of Everett*, 69 Wn. App. 641, 647-48, 849 P.2d 1276 (1993). This burden requires the landowner to demonstrate: (1) the use existed prior to the contrary zoning ordinance, (2) the landowner has never abandoned or discontinued the use, and (3) the use was lawful at the time it began. *See First Pioneer Trading Co. v. Pierce County*, 146 Wn. App. 606, 614, 191 P.3d 928 (2008). A use must be clearly established prior to the relevant change in zoning law. *See Anderson v. Island County*, 81 Wn.2d 312, 321-22, 501 P.2d 594 (1972).

The appellants have not met their burden of establishing a nonconforming use. Transient accommodations have been prohibited in Leavenworth's low-density residential zones since the December 1989 adoption of Ordinance 852. *See* CP at 1458. There is no apparent reason why the appellants' properties would not fall under the definition of "transient accommodation," nor do the appellants point to any such reason. And none of the appellants began their STR operations prior to 1989. In any event, Ordinance 852 provided for a one-year amortization period, meaning all STRs in low-density residential zones were required to have been phased out by December 1990, excepting any bed and breakfast that obtained a permit. In sum, all of the appellants' STR operations were established in violation of valid provisions of the Leavenworth Municipal Code.

Because none of their operations were lawfully established, the STR owners fail to demonstrate they have a vested right to continue their uses. *See First Pioneer Trading Co.*, 146 Wn. App. at 617 (affirming hearing examiner's finding that applicant failed to establish a nonconforming use because applicant "failed to show that its industrial use of the property was legal at any time"). The nonconforming use doctrine is "'not intended to protect uses which were not legally commenced.'" *McMilian*, 161 Wn. App. at 594 (quoting 2 PATRICIA E. SALKIN, AMERICAN LAW OF ZONING, § 12:11 at 12–38 (5th ed. 2010)); *see also id.* at 592-93 (noting the nonconforming use doctrine "'prevents the abrupt termination of what one had been doing *lawfully*'" and "'does not generally

extend beyond this purpose'" (emphasis added) (quoting *Meridian Minerals Co. v. King County*, 61 Wn. App. 195, 212, 810 P.2d 31 (1991)).[7]

*Amnesty argument under the 2021 STR code*

The appellants contend that, even if their operations are not legal nonconforming uses under Washington common law, they nonetheless qualify as legal nonconforming uses under several provisions of the county's 2021 STR code. The appellants are mistaken.

The STR code allows amnesty only for "existing short-term rentals" that "have

---

[7] The appellants rely heavily on *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 327 P.3d 614 (2014). But *Wilkinson* is inapposite. *Wilkinson* was a dispute between a group of homeowners and their subdivision's governing community association. The dispute partially focused on whether covenants forbidding "commercial" uses but allowing "residential" uses forbade homeowners' operation of STRs. *See Wilkinson*, 180 Wn.2d at 244-47, 249-55. The *Wilkinson* Court reasoned that the language in the covenants allowing "residential" uses was consistent with use of a property as an STR. *Id.* at 252, 254-55. *Wilkinson* recognized the community association could have forbade STRs had it used more specific language. *See id.* at 255 ("[O]ur holding does not prohibit *residential* communities from prohibiting [STRs]. We merely hold that the Chiwawa River Pines community *did not do so . . . .*" (emphasis added)). *Wilkinson* has no application here, where Ordinance 852 used specific language, clearly and plainly prohibiting STRs in low-density residential zones. Nor does the county's STR code here contravene *Wilkinson* by its reference to STRs as a "commercial" use. CCC 11.88.290(1)(A). *Wilkinson* involved a case where the terms "residential" and "commercial" were not specifically defined. Nothing in that decision restricts a zoning authority's decision to adopt a different conception of what is "residential" and what is "commercial." *Wilkinson* simply does not apply to a case where a zoning authority has explicitly legislated about the permissibility of STRs.

11

been in full legal compliance with any existing city codes adopted through prior resolution by the county." CCC 11.88.290(2)(C)(iv)(a). An STR operating "in violation" of existing law "must immediately cease all operation." CCC 11.88.290(2)(C)(iv)(a)(1). "A property operating in violation of existing city UGA land use regulations has no legal existing nonconforming status as a short-term rental." *Id*.

This requirement, that amnesty be afforded only to lawful preexisting uses, is consistent with the common law on nonconforming uses. *See McGuire*, 144 Wn.2d at 648 (noting a nonconforming use is one that "*lawfully* existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date" (emphasis added)). And absent clear evidence to the contrary, we interpret legal provisions in harmony with the common law. *See State v. Farnworth*, 192 Wn.2d 468, 474, 430 P.3d 1127 (2018) (noting courts should hesitate to recognize an abrogation of the common law absent clear evidence of the legislature's intent to do so); *King County Dep't of Dev. & Env't Servs.*, 177 Wn.2d at 645-46 (striving to interpret provisions of the King County Code to be "consistent with *our case law* applying the nonconforming use doctrine" (emphasis added)).

Despite the Chelan County Code's clear prohibition on STRs operating in violation of existing city law, the appellants claim their properties fall under two purported

loopholes in the STR code. We disagree with this assessment and address each provision in turn.

The appellants first point to subsections (2)(C)(v) and (2)(E)(i) of the Chelan County STR code. These provisions identify conditions for STRs to continue to operate as a legally nonconforming use. Contrary to the appellants' arguments, these subsections are facially inapplicable to this case. The provisions explicitly apply to "[e]xisting nonconforming short-term rentals." CCC 11.88.290(2)(C)(v). The code defines a "nonconforming" property as "a lot, use, building or structure *which was lawful* prior to the adoption, revision or amendment of a zoning ordinance, but which fails by reason of such adoption, revision or amendment to conform to the current requirements of the zoning district." CCC 14.98.1300 (emphasis added).[8] Because, as explained above, the appellants' properties were not lawful prior to adoption of the 2021 STR code, they are not "nonconforming," *id*., and therefore do not fall under the category of "existing nonconforming short-term rentals." CCC 11.88.290(2)(C)(v).

The STR owners also point to CCC 11.88.290(2)(E)(ii)(a). This provision identifies four circumstances under which an existing STR operating as of September 27, 2021, will be considered nonconforming. The second circumstance, on which appellants rely,

---

[8] The definition of "nonconforming" set forth in CCC 14.98.1300 applies to Title 11 of the code, including the STR code. *See* CCC 14.98.010.

is if the "zone does not expressly allow new [STRs]." CCC 11.88.290(2)(E)(ii)(a)(2).

The appellants appear to argue that because their zones explicitly prohibit STRs, and thus do not expressly allow STRs, their prohibited STRs must be deemed nonconforming and therefore lawful. To the extent this is the appellants' argument, it strains credulity. The wording of CCC 11.88.290(2)(E)(ii)(a)(2) is admittedly confusing. But it would be manifestly absurd to read this subsection of the code as stating that a prohibited use must also be deemed nonconforming and therefore legal. This clearly was not the county's intent, as set forth in CCC 11.88.290(2)(C)(iv)(a)(1). We reject an interpretation that would flout the express terms of the STR code. *See Estate of Bunch v. McGraw Residential Ctr.*, 174 Wn.2d 425, 433, 275 P.3d 1119 (2012) (noting the fundamental rule in statutory interpretation to avoid absurd results).

The appellants' properties were not lawful prior to the county's enactment of the 2021 STR code. As a result, per the plain language of the code, the properties have "no legal existing nonconforming status." CCC 11.88.290(2)(C)(iv)(a)(1). The STR code does not provide amnesty to existing STRs that operated in contravention of legal authority. Thus, the appellants claim for relief under the 2021 STR code fails.

*Constitutional arguments*

For the first time in their reply brief, the STR owners also advance constitutional arguments. First, they posit the county's denial of their permit applications ran afoul of

the state and federal constitutions' prohibition on ex post facto laws. *See* U.S. CONST. art. I, § 10, cl. 1; WASH. CONST. art. I, § 23. Second, they contend that relying on the 1989 adoption of Ordinance 852 as the date of the city of Leavenworth's prohibition on STRs subjects them to an ordinance that is void for vagueness. *See A.W.R. Constr., Inc. v. Dep't of Lab. & Indus.*, 152 Wn. App. 479, 489-90, 217 P.3d 349 (2009).

We decline to address claims raised for the first time in a reply brief. *See, e.g., In re Dependency of G.M.W.*, 24 Wn. App. 2d 96, 115 n.6, 519 P.3d 272 (2022). While RAP 2.5(a) allows a party to raise some constitutional arguments for the first time on appeal, nothing in the rule permits an appellant to delay presentation of a constitutional argument until their reply brief.

## CONCLUSION

The hearing examiner's decisions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, A.C.J.                 Staab, J.

15