30 P.3d 453 (2001)
144 Wash.2d 640
CITY OF UNIVERSITY PLACE, a municipal corporation, organized under the laws of the State of Washington, Respondent,
v.
Brian P. McGUIRE, a single man, Petitioner.
No. 70356-6.
Supreme Court of Washington, En Banc.
Argued May 22, 2001.
Decided September 6, 2001.
*454 Gordon, Thomas, Honeywell, William Theodore Lynn, Margaret Yvonne Archer, Tacoma, for Petitioner.
Timothy X. Sullivan, University Place, Keating, Bucklin, McCormack, Michael Charles Walter, Seattle, for Respondent.
CHAMBERS, J.
Developer Brian McGuire seeks to grade a 1.4-acre knoll as fill for a nearby development. The City of University Place has refused permission. McGuire argues he has a valid nonconforming use right to mine the knoll, as it is historically part of a site owned and operated by his predecessor in interest. University Place argues that the nonconforming use either never accrued to the knoll *455 or, in the alternative, has been abandoned. McGuire urges this Court to adopt the doctrine of diminishing asset, which extends the boundaries of the nonconforming mining use to the entire parcel intended to be mined at the time the zoning ordinance was promulgated. We concur with the overwhelming number of jurisdictions considering the question and conclude the diminishing asset doctrine is applicable to mining operations. We also conclude University Place has failed to establish the hearing examiner erred in deciding the nonconforming use had not been abandoned. We reverse the Court of Appeals.

STATEMENT OF FACTS
The knoll at issue is a 1.4-acre parcel that was once a part of 80 acres of property owned by the Holroyd Land Company (Holroyd). Since the 1940s, Holroyd has been gradually and continually mining various portions of this 80 acres of land for sand and gravel. Pierce County, and later University Place, enacted zoning ordinances that restricted or prohibited mining, but Holroyd continued to mine as a valid nonconforming use. In 1991, Holroyd sold a portion of the property to McGuire who has been gradually developing the former Holroyd property for residential and commercial uses. McGuire seeks to reclaim one former mine in part by grading the adjacent 1.4-acre knoll to use as fill. University Place denied permission. Since McGuire grounds his right to grade the 1.4 acres upon the property's prior nonconforming use as a mine, we turn to the property's mining history.
Originally Holroyd operated the mine unfettered by zoning ordinances. In 1944, Pierce County adopted a zoning ordinance covering the Holroyd site that permitted continued nonconforming uses subject to an abandonment provision.[1]
In 1955, Pierce County amended Resolution 1650 to permit the operation of "[q]uarries, sand and gravel pits" in "1-G GENERAL USE DISTRICT[S] ... [o]n sites approved by special permit." In 1956, a Pierce County Commissioner stated at a public hearing that Holroyd could continue to operate the mines, presumably applying the nonconforming use doctrine. This zoning scheme was amended in 1957 allowing "[q]uarries, sand and gravel pits" to operate in Holroyd's area only with special permits. It does not appear Holroyd ever sought a special permit. Holroyd mined the parcel continuously during this period and until sale, in small portions, occasionally seeking permits from the Department of Natural Resources (DNR).
In 1970, Washington State enacted the surface mining act (SMA), chapter 78.44 RCW. Under the SMA, mine owners must obtain surface mining permits from the DNR. The SMA requires mine owners to file a reclamation plan outlining how the property will be brought to beneficial use after mining ceases before a permit will be issued. RCW 78.44.081. While the land need not be level, steep slopes are discouraged. RCW 78.44.141(4). Mine owners must establish that they can lawfully mine so, at Holroyd's request, Pierce County informed DNR that Holroyd's mines were legal nonconforming uses previously established when the zoning ordinance was promulgated. Holroyd only sporadically sought permits for the various mining projects engaged on the property and by 1972 had expanded his mines outside the permitted area.
Holroyd did indicate an intent to mine the entire 80 acres in some of the permit applications by including the property in an attached map. However, the legal description of the area he sought to mine did not always reference the 1.4-acre knoll at issue today.
In 1973, Bridgeport Way and Anderson Pierce Road were realigned to cut off the *456 knoll from the rest of the 80 acres. The 1.4 acres was essentially an island boarded by paved roads. The 1.4 acres was not mined before the road was moved and no one has attempted to mine the 1.4 acres until McGuire sought to level the hill on the parcel for fill.
In 1991, the DNR ordered Holroyd to cease mining outside of the area covered by permits. Holroyd acknowledged this order, and agreed not to mine outside of the permitted area without permission. The 1.4-acre knoll was outside the permitted area. In May 1991, Holroyd sold the property, which is now within the city limits of University Place, to McGuire.
University Place has prohibited all new mining activities. University Place Municipal Code (UPMC) 18.44.020. Nonconforming uses are allowed to continue, and may be changed by permit. UPMC 19.75.070. If the nonconforming use is abandoned for more than one year, the right is extinguished, unless extended by a hearing examiner. UPMC 19.35.130(D), (J).
McGuire is a property developer, not a miner. He testified his intention was to develop the property, not to mine it. He purchased the property adjacent to the 1.4 acres contingent upon University Place approving a shopping center and two residential subdivisions. These developments were approved. The required January 1993 Final Environmental Impact Statement (FEIS) noted McGuire planned to level a hill on the 1.4 acres to provide fill material for the shopping center. McGuire estimates the 1.4 acres will provide 2,600 cubic yards of fill material. The 1.4 acres is a treed knoll that provides a buffer from roads and commercial development to residents. Many residents protested the destruction of the knoll's use as a buffer zone. University Place denied McGuire's application for a site development permit to remove fill material from the 1.4 acres on the following grounds: (1) the land was zoned residential and mining was nonpermitted use; (2) mining the site would be an impermissible expansion of a nonconforming use; and (3) McGuire did not have a DNR reclamation permit to mine the 1.4 acres.
McGuire appealed the denial to a hearing examiner. The hearing examiner reversed the city's denial of the permit and allowed McGuire to go forward with his construction plan. University Place appealed to the Pierce County Superior Court. The trial court upheld the hearing examiner, but granted a stay pending appeal. University Place prevailed before the Court of Appeals, which assumed without deciding the diminishing asset doctrine was the law in Washington, but found Holroyd had abandoned any right to continue a nonconforming use by not indicating objectively an intention to mine the 1.4 acres. City of Univ. Place v. McGuire, 102 Wash.App. 658, 9 P.3d 918 (2000). McGuire sought review in this Court, which was granted.

ANALYSIS
Review is governed by the Land Use Petition Act (LUPA), chapter 36.70C RCW. To prevail University Place must establish either the hearing examiner made a mistake of law, that there was insufficient evidence to support the decision, or that the decision was clearly erroneous.[2] Errors of law are reviewed de novo. Girton v. City of Seattle, 97 Wash.App. 360, 363, 983 P.2d 1135 (1999), review denied, 140 Wash.2d 1007, 999 P.2d 1259 (2000). Whether the hearing examiner correctly applied the diminishing asset doctrine to the 1.4 acres will be reviewed to determine if it was clearly erroneous. Schofield v. Spokane County, 96 Wash.App. 581, 586, 980 P.2d 277 (1999). The decision as a whole will be reviewed for substantial evidence supporting the hearing examiner's decision. Substantial evidence is "`a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" City of Redmond v. Cent. Puget *457 Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998) (quoting Callecod v. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510 (1997)).
[T]he initial burden of proving the existence of a nonconforming use is on the land user making the assertion. However, once a nonconforming use is established, the burden shifts to the party claiming abandonment or discontinuance of the nonconforming use to prove such. "Whether abandonment has occurred is a question of fact as to which the municipality has the burden of proof." This burden of proof is not an easy one.
Van Sant v. City of Everett, 69 Wash.App. 641, 647-48, 849 P.2d 1276 (1993) (citations omitted); see also 1 Robert M. Anderson, American Law of Zoning § 6.09 (3d ed.1986). In short, McGuire bears the burden of establishing a lawful or vested nonconforming use covering the 1.4 acres under some theory; the burden then shifts to University Place to show the use has been abandoned.

Nonconforming Use
Local governments have the power to promulgate zoning schemes, consistent with the United States Constitution. Goldblatt v. Town of Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). "If [the] ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." Goldblatt, 369 U.S. at 592, 82 S.Ct. 987. The zoning ordinance must merely be reasonable in light of the menace faced, the availability and effectiveness of less drastic alternatives, and the loss faced by the property owner. Goldblatt, 369 U.S. at 594-95, 82 S.Ct. 987.
"A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated." Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wash.2d 1, 6, 959 P.2d 1024 (1998) (citing 1 Robert M. Anderson, American Law of Zoning § 6.01 (Kenneth H. Young ed., 4th ed.1996)). "The policy of zoning legislation is to phase out a nonconforming use." Anderson v. Island County, 81 Wash.2d 312, 323, 501 P.2d 594 (1972). Lawful nonconforming uses are allowed to continue for some period of time, though the local government may regulate or even terminate the nonconforming use, subject to constitutional limits. Rhod-A-Zalea, 136 Wash.2d at 8, 959 P.2d 1024. Nonconforming uses are not favored, and may be extinguished, either after a period of nonuse or a reasonable amortization period allowing the owner to recoup on investment.[3]Rhod-A-Zalea, 136 Wash.2d at 7, 959 P.2d 1024; see also Choi v. City of Fife, 60 Wash. App. 458, 803 P.2d 1330 (no intent to abandon necessary if zoning scheme allows termination of nonconforming use rights after use has been unintentionally vacated, rather than intentionally abandoned), review denied, 116 Wash.2d 1034, 813 P.2d 583 (1991). Under Washington common law, nonconforming uses may be intensified, but not expanded. See, e.g., Keller v. City of Bellingham, 92 Wash.2d 726, 731-32, 600 P.2d 1276 (1979).
The hearing examiner concluded Holroyd had a legal nonconforming use right to mine gravel on his entire acreage. To reach that conclusion, he employed the doctrine of diminishing asset, concluding it was in accord with Washington law. Accordingly, we turn to the diminishing asset doctrine to determine if this was error.

Diminishing Asset
Whether Washington State recognizes the doctrine of diminishing asset is a question of first impression, and will be reviewed de novo. The term likely derives from the amortization calculation used by accountants to determine the worth of an asset at a particular time whose value will be exhausted by usfor example, a mine, which *458 has a finite useable term as a mine. See generally Edwin Hood et al., Valuation of Closely Held Business Interests, 65 UMKC L.Rev. 399, 420 (1997). It is especially applicable to mining operations:
[C]ourts have observed that the very nature of the excavating business contemplates the use of land as a whole, not a use limited to a portion of the land already excavated. Such a diminishing-asset enterprise is "using" all of the land contained in a particular asset; as a practical matter it must begin digging at one spot and continue from there to the boundary of its land. The entire tract of a diminishing-assets operation must be regarded as a "lot" within the meaning of an ordinance which permits a nonconforming use to continue on "such lot," for to hold otherwise would be to deny the excavator his use.
1 Robert M. Anderson, American Law of Zoning § 6.52, at 604-05 (3d ed.1986) (footnotes omitted). Most courts that have considered the proper scope of a legal nonconforming mining activity have adopted the diminishing asset doctrine to protect the owner's expectation for the use of the land which otherwise would be severely disrupted by a later enacted zoning system. It can be seen as either an exception to the general principle that a nonconforming use will be restricted to its original site or as a substantive adaptation of the nonconforming use doctrine to recognize the realities of extractive industries. The Supreme Court of California observed:
The very nature and use of an extractive business contemplates the continuance of such use of the entire parcel of land as a whole, without limitation or restriction to the immediate area excavated at the time the ordinance was passed. A mineral extractive operation is susceptible of use and has value only in the place where the resources are found, and once the minerals are extracted it cannot again be used for that purpose. "Quarry property is generally a one-use property. The rock must be quarried at the site where it exists, or not at all. An absolute prohibition, therefore, practically amounts to a taking of the property since it denies the owner the right to engage in the only business for which the land is fitted."
Hansen Bros. Enters., Inc. v. Bd. of Supervisors, 12 Cal.4th 533, 907 P.2d 1324, 1336-37, 48 Cal.Rptr.2d 778 (1996) (quoting Morton v. Superior Court, 124 Cal.App.2d 577, 582, 269 P.2d 81 (1954)).
Similarly, the Supreme Court of Illinois held a lawful nonconforming use of land as a mine could be extended to the boundaries of that parcel of land:
We think that in cases of a diminishing asset the enterprise is "using" all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation. It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously it cannot operate over an entire tract at once.
Du Page County v. Elmhurst Chicago Stone Co., 18 Ill.2d 479, 484, 165 N.E.2d 310, 313 (1960).[4]
*459 We agree with the overwhelming number of jurisdictions considering the issue. The proper scope of a lawful nonconforming use in an exhaustible resource is the whole parcel of land owned and intended to be used by the owner at the time the zoning ordinance was promulgated. We therefore adopt the doctrine of diminishing asset to determine the lawful scope of the nonconforming use in mining operations. We note that potential damage to zoning schemes may be ameliorated through reasonable amortization periods. We also conclude that Holroyd had a legal nonconforming use and had a right to mine gravel from the entire acreage, based on the hearing examiner's findings. Holroyd's right vested in his successor, McGuire. The hearing examiner properly found the entire parcel of land could be mined under the diminishing asset doctrine.[5]

Abandonment
We conclude that the nonconforming use attached to the entire parcel owned by Holroyd including the 1.4 acres. The next issue is whether the nonconforming use has been abandoned. In University Place, if a nonconforming use is "discontinued for more than one year, the use of the property and structure shall be deemed abandoned and shall conform to a use permitted in the zone classification in which it is located." UPMC 19.35.130(J)(1). Nonconforming uses are treated like vested property rights, and may not be voided easily. Van Sant, 69 Wash.App. at 649, 849 P.2d 1276. University Place must establish "`(a) [a]n intention to abandon; and (b) an overt act, or failure to act, which carries the implication that the owner does not claim or retain any interest in the right to the nonconforming use.'" Id. at 648, 849 P.2d 1276 (quoting 8A Eugene McQuillin, Municipal Corporations § 25.192 (3d ed.1986)). This is a question of fact. Van Sant, 69 Wash.App. at 648, 849 P.2d 1276. Since the hearing examiner found the use had not been abandoned, University Place bears the burden of showing either "land use decision is not supported by evidence that is substantial" or the "decision is a clearly erroneous application of the law to the facts." RCW 36.70C. 130(c), (d).
We conclude there was substantial evidence supporting the hearing examiner's decision, and University Place has not demonstrated he misapplied the law of diminishing asset doctrine to the facts of this case. Evidence will be viewed in the light most favorable to McGuire, as "the party who prevailed in the highest forum that exercised fact-finding authority, a process that necessarily entails acceptance of the factfinder's views regarding the credibility of witnesses and the weight to be given reasonable but competing inferences." State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wash.App. 614, 618, 829 P.2d 217 (1992). Review is deferential. Schofield, 96 Wash.App. at 586, 980 P.2d 277.
The fact the parcel was never mined does not reverse the presumption the hearing examiner correctly decided it was appropriate to mine now as it was part of the original plan for the property. The fact it was geographically isolated from the main parcel was caused by a government action, the rerouting of a road, and does not speak to the intention of Holroyd at all. The fact the site was not included in some of the permits is evidence of intent to abandon. However, the hearing examiner could have included that this was an inadvertent omission. Finally, the fact the property was sold without mention of mining is potentially evidence of abandonment, but not conclusive.[6] There is no act or *460 omission that, as a matter of law, is proof of abandonment. See generally 1 Robert M. Anderson, American Law of Zoning § 6.65 (3d ed.1986).

CONCLUSION
We adopt the doctrine of diminishing asset as applied to nonconforming mining operations. We conclude that the City of University Place has not established the nonconforming use was abandoned. We reverse the Court of Appeals and reinstate the trial court's order affirming the order of the hearing examiner.
SMITH, A.C.J., MADSEN, JOHNSON, SANDERS, IRELAND, BRIDGE, OWENS, JJ., and KURTZ, J. Pro Tem., concur.
NOTES
[1] Resolution 1650 said in relevant part:

1. The lawful use of ... land ... existing at the time of the passage of the resolution establishing any zoning district, although such use does not conform to the provisions therein, may be continued, but if such non-conforming use is discontinued for a period of one year, any future use of said ... land ... shall be in conformity with the provisions of said established use district, unless the use, thereof, is issued a permit by the Pierce County Commissioners.
Pierce County Zoning Resolution 1650, § 7 (1944).
[2] To prevail, University Place must establish one of the following:

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise [or];
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court; [or]
(d) The land use decision is a clearly erroneous application of the law to the facts[.]
RCW 36.70C.130(b)-(d).
[3] This case does not involve an amortization schedule requiring nonconforming use property owners to end their use in a reasonable period of time. Such a schedule has been approved in Washington State. See Rhod-A-Zalea, 136 Wash.2d at 7, 959 P.2d 1024; accord Teuscher v. Zoning Bd. of Appeals, 154 Conn. 650, 228 A.2d 518, 522-23 (1967).
[4] See also Stephan & Sons, Inc. v. Municipality of Anchorage, 685 P.2d 98 (Alaska 1984); Town of Wolfeboro v. Smith, 131 N.H. 449, 556 A.2d 755 (1989) (nonconforming use right extends to all areas manifested an intention to excavate); Moore v. Bridgewater Township, 69 N.J.Super. 1, 173 A.2d 430, 437 (1961) (lawful nonconforming use of diminishing asset extends to the boundaries of original tract); Syracuse Aggregate Corp. v. Weise, 51 N.Y.2d 278, 434 N.Y.S.2d 150, 414 N.E.2d 651, 654-55 (1980) (holding restricting nonconforming use to the original quarry site the equivalent of denying the use of the property and thus improper); R.K. Kibblehouse Quarries v. Marlborough Township Zoning Hearing Bd., 157 Pa.Cmwlth. 630, 630 A.2d 937, 943 (1993) (finding constitutional right to continue nonconforming use under due process clause but limiting expansion to "reasonable restrictions on the extension of a nonconforming use"); Gibbons & Reed Co. v. North Salt Lake City, 19 Utah 2d 329, 431 P.2d 559 (1967); Smart v. Dane County Bd. of Adjustments, 177 Wis.2d 445, 501 N.W.2d 782 (1993); cf. Fredal v. Forster, 9 Mich.App. 215, 156 N.W.2d 606 (1967) (must balance right to use property as planned against danger to zoning schemes; land being used can be expanded, but land may not be reserved in anticipation of actual use); but see Town of Billerica v. Quinn, 320 Mass. 687, 71 N.E.2d 235 (1947) (limiting lawful nonconforming loam removal to original site, but expressly not ruling on whether a mine could be expanded beyond original site); Wende v. Bd. of Adjustment, 27 S.W.3d 162 (Tex.Ct.App.2000) (recognizing other states `nearly unanimous' in adopting diminishing asset doctrine; expressly reserving judgment as to whether doctrine applies in Texas), review granted April 26, 2001
[5] This case does not afford an opportunity to explore whether a local government could explicitly not allow the use of the diminishing asset doctrine to define the scope of a nonconforming use.
[6] See, e.g., Verbatim Transcript of Proceedings (Apr. 30, 1999) at 26 (McGuire's attorney argued: "He's trying to grade the property. What he doesn't want to have to comply with are city ordinances that say he has to preserve the trees at the top of the hill. He can't very well preserve the trees and mine the gravel. That's really what this case is about, in essence.").