**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

CITY OF KENT, a Washington )
Municipal Corporation, )
         )   No. 73269-2-I
         )
     Respondent, )
         )   DIVISION ONE
     v. )
         )
DONALD I. BERG and KAREN BERG, )
         )   UNPUBLISHED OPINION
     Appellants. )
         )   FILED: December 5, 2016

MANN, J. — Donald and Karen Berg seek review of a decision by the City of Kent's hearing examiner affirming a notice of violation citing the Bergs with illegally expanding a nonconforming commercial outdoor storage yard within a residential neighborhood without obtaining a conditional use permit. The Bergs petitioned for review to the King County Superior Court under the Land Use Petition Act (LUPA), chapter 36.70C RCW. The superior court upheld the hearing examiner's decision affirming the notice of violation. Finding no error of law and that substantial evidence supports the hearing examiner's determination that the Bergs illegally expanded and intensified the nonconforming storage yard, we affirm.

## FACTS

Donald and Karen Berg own two parcels of property at 27918 and 27824 152nd Avenue SE in Kent, Washington. The combined properties are approximately three acres in size and known as Shady Park. There is a small grocery store and an auto repair business located on the west side of Shady Park adjacent to 152nd Avenue SE. The grocery store was established in the 1920s. The auto repair shop was established in the 1940s. Prior to 1996, the property was in unincorporated King County. Between 1958 and 1996, the property was zoned "residential" under King County's zoning code. Commercial uses, including grocery stores, auto repair, and commercial outdoor storage, were prohibited in King County's residential zone.

The City of Kent (City) annexed Shady Park and surrounding properties in 1996. During the annexation process, the City accepted public testimony concerning future zoning of the properties. David Spencer, the owner of Shady Park at the time, submitted testimony requesting that either all, or at least a portion, of his property be zoned commercial so that he could continue use of the property for the existing grocery store and auto repair business. The City planning director acknowledged that the grocery store and auto repair business existed but was opposed to commercial zoning out of concern for increased commercial uses within the residential area. The City ultimately compromised and zoned the Shady Park property Neighborhood Convenience Commercial (NCC).[1] Under NCC zoning the grocery store is an allowed use, but other commercial uses, including auto repair and outdoor commercial storage

---

[1] Kent City Code (KCC) 15.03.010.

are prohibited. The City agreed, however, that the Shady Park auto repair business could remain as a legal nonconforming use.

In 2001, the grocery store burned down and Spencer notified the City that he wanted to rebuild the store. Based on Spencer's inquiry, the City inspected the property and discovered an outdoor storage area east of the grocery store. In January 2002, the City notified Spencer of "possible land use violations" on his property and informed him that outdoor storage was not permitted as an accessory or principal use in the NCC zone.[2] As the permitting process for the grocery store ran its course, the City continued to inspect the Shady Park property. On September 6, 2002, the City issued a notice of violation to Spencer for the "illegal storage of recreational vehicles, boats, equipment and miscellaneous inoperable and/or disassembled vehicles."[3] The City's notice required the removal of the stored items.

Spencer continued to move forward with the permitting promise to rebuild the grocery store. In a September 11, 2002, letter summarizing a preapplication meeting, the City confirmed that outdoor storage was not allowed on the Shady Park property:

> The review of this application does not constitute approval of the outdoor RV [(recreational vehicle)] and boat storage, self service mini-warehouse storage, impounded vehicle storage, or vehicle dismantling and salvage. These uses are not allowed under the current zoning of NCC . . . . To be considered legal, non-conforming these uses must have been legally established with King County at this location prior to being annexed into the City of Kent in January 1996. Documentation of this prior approval from King County must be submitted to the City of Kent in order for the City to recognize these uses as legal, non-conforming.[4]

No documentation of prior approval by King County was ever submitted.

---

[2] Certified Administrative Record (CAR) at 17-18.
[3] CAR at 19-20.
[4] CAR at 27.

The Bergs purchased the Shady Park property in June 2006. In 2009, the City began receiving neighborhood complaints concerning increased storage of vehicles, heavy equipment, recreational vehicles, and boats stored on the Shady Park property. In February 2009, the City notified the Bergs by letter that the outdoor storage was not allowed within the NCC zone:

> The zoning for this property is NCC. . . . Outdoor storage is not a permitted use in this zone. To be considered a legal, non-conforming use, the outdoor storage must have been legally established with King County at this location prior to being annexed into the City of Kent in January 1996. After reviewing the site history[,] . . . the City determined that outdoor storage was legally established on the site prior to annexation and that the degree of outdoor storage allowed on the site is that which is depicted on aerial photos taken in 1996, the same year the property was annexed to the City of Kent. A clearer image of the site taken in 1999 shows a similar level of outdoor storage. Enclosed are copies of both images for your use. Based on a site visit on January 21, 2009, the degree of outdoor storage has greatly increased beyond that which was legally established as a non-conforming use. Furthermore, Kent City Code Section 15.08.100.C states that no land devoted to a non-conforming use shall be expanded, enlarged, extended or intensified unless the use is changed to a use permitted in the district in which such land is located.[5]

The City ordered the Bergs to reduce the size of the outdoor storage area to the 1996 and 1999 levels.

Between February 2009 and March 2011, the Bergs increased the use of their property for outdoor storage despite ongoing inspections and demands by the City that they reduce usage to the level that existed in 1996. Based on the Bergs' assurance that they would comply, the City did not take enforcement action. In March 2011, the Bergs' property manager, Tom Glenn, met with City planning staff to discuss the outdoor storage. The City provided Glenn with an annotated 1999 aerial photo that outlined

---

[5] CAR at 37.

approximately 34,000 square feet of property on the west side of the Shady Park property that could be used for storage related to the auto repair business. Consistent with the City's previous position, the area outlined was based on the area of storage visible in the 1996 and 1999 aerial photos. The City informed the Bergs that they could apply for a conditional use permit (CUP) if they wanted to use the property in a manner inconsistent with the City's zoning. The Bergs did not apply for a CUP. Instead, in August 2011, the Bergs informed the City that they intended to use the entire site for storage, claiming the entire property was "grandfathered" into the zone.

In February 2012, after receiving new complaints about increasing use of the Shady Park property for storage, City Planning Director Fred Satterstrom met with Glenn to resolve the issue. The parties were unable to resolve the dispute. On March 9, 2012, the City issued a 50 page correction notice that contained 9 pages of detailed findings along with multiple exhibits documenting the history of the property and violations of the City zoning code. The correction notice required the owners to remove and cease operating the outdoor storage yard. After the Bergs failed to comply, on May 24, 2012, the City issued a notice of violation (2012 NOV) fining the Bergs $500 per day for the ongoing violations. The 2012 NOV incorporated the findings and exhibits included in the correction notice.

The Bergs filed an administrative appeal of the 2012 NOV with the City's hearing examiner claiming that the storage on the entire property was legal nonconforming use. The Bergs' appeal was heard by the City's hearing examiner over eight days between June 13 and September 15, 2013. The hearing examiner issued his final findings, conclusions, and order on December 3, 2013 (decision). The decision identified the

hearing dates, testifying witnesses, and the exhibits submitted into the record during the hearing. The decision included the following findings:

1. The Notice of Violation Issued on May 24, 2012 alleged that violations of the Kent City Code have occurred at 27918 and 27824 152nd Avenue SE, in Kent, Washington, 98043, Parcel Number 3522059154; and, named the following persons as being responsible for the Code Violations: Donald I and Karen Berg; . . .

2. The Notice of Violation dated May 24, 2012 referenced a, Correction Notice dated March 9, 2012 (which was attached and incorporated by reference) for the legal and factual basis for this violation: "Outdoor storage including truck, heavy equipment, Recreational Vehicles, boats[,] and contractor storage yards."

3. The aforementioned Correction Notice alleged that the persons responsible for the violations included Donald I. and Karen Berg.

4. Mr. and Mrs. Berg were notified of and were given several opportunities to correct the violations and/or to work with the City of Kent to settle the dispute, which did not occur.

5. A preponderance of the evidence supports a finding that Mr. and Mrs. Berg violated the King County Code. For violations of the Code, the Notice of Violation assess a total fine of $500.00.

6. Mr. and Mrs. Berg are subject to additional civil and/or criminal penalties if any violation subject to the Notice of Violation is not corrected or abated. KCC 1.04.18D.A.4.

7. Abatement of the violations by the City is authorized, at the Berg[s'] expense. KCC 1.04.180.A.5.

8. Mr. and Mrs. Berg failed to provide credible evidence regarding the nature of the violations, why the violations exist, and why the violations have not been abated or corrected.[6]

Based on the findings, the hearing examiner concluded that: (1) "The Bergs violated the Kent City Code as set out in the Notice of Violation;" and (2) "The Bergs

---

[6] Clerk's Papers (CP) at 23.

must carry out the correction action and pay applicable unpaid monetary penalties required in the Notice of Violation."[7]

The Bergs challenged the decision by filing a LUPA petition for review in the King County Superior Court. The superior court affirmed the hearing examiner's decision. The Bergs filed a timely appeal to this court on March 30, 2015.

Over two months after filing their appeal, the Bergs filed a CR 60 motion with the superior court seeking relief from the final judgment for "'excusable neglect or irregularity,'" "'newly discovered evidence,'" or "'misrepresentation or other misconduct of an adverse party.'"[8] On August 28, 2015, the superior court denied the CR 60 motion. The Bergs then recommenced their appeal adding an assignment of error for the denial of their CR 60 motion.

## ANALYSIS

### I.

Review of the hearing examiner's decision is governed by LUPA. We review the decision of the "local jurisdiction's body or officer with the highest level of authority to make the determination." RCW 36.70C.020(2); Citizens to Preserve Pioneer Park, LLC v. City of Mercer Island, 106 Wn. App. 461, 474, 24 P.3d 1079 (2001). We stand "in the shoes of the superior court" and limit our review to the record before the hearing examiner. Pavlina v. City of Vancouver, 122 Wn. App. 520, 525, 94 P.3d 366 (2004). Under LUPA, the party seeking reversal of a hearing examiner's decision must establish

---

[7] CP at 24.
[8] CP at 702-15 (quoting CR 60).

that one of six bases listed in RCW 36.70C.130(1) has been satisfied.[9] McMilian v. King County, 161 Wn. App. 581, 589-90, 255 P.3d 739 (2011).

The Bergs seek relief from the hearing examiner's decision pursuant to RCW 36.70C.130(1)(a), (b), (c), (d), and (f), contending that the hearing examiner engaged in unlawful procedure, erroneously interpreted the law, erroneously applied the law, failed to base the findings of fact on substantial evidence, and violated the Bergs' constitutional rights in making his decision.

Claimed errors of law are reviewed de novo. Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 828-29, 256 P.3d 1150 (2011). When reviewing a local government ordinance the "'reviewing court gives considerable deference to the construction of' the challenged ordinance 'by those officials charged with its enforcement.'" Ford Motor Co. v. City of Seattle, 160 Wn.2d 32, 42, 156 P.3d 185 (2007) (quoting Gen. Motors Corp. v. City of Seattle, 107 Wn. App. 42, 57, 25 P.3d 1022 (2001)). The decision as a whole is reviewed for substantial evidence. City of Univ. Place v. McGuire, 144 Wn.2d 640, 647, 30 P.3d 453 (2001). Under the substantial evidence test "there must be a sufficient quantum of evidence in the record

---

[9] RCW 36.70C.130(1) provides six bases for relief:

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

to persuade a reasonable person that the declared premise is true." Phoenix, 171 Wn.2d at 831. The court does not weigh the evidence or substitute its judgment. Phoenix, 171 Wn.2d at 832. We "view facts and inferences in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority," in this case, the hearing examiner. Phoenix, 171 Wn.2d at 831.

II.

As a preliminary matter, the Bergs contend the hearing examiner failed to follow the prescribed process set out in Kent City Code (KCC) 1.04.160, by not providing sufficient findings of fact and conclusions of law. Under RCW 36.70C.130(1)(a), relief will be granted if the appellant demonstrates that the hearing examiner engaged in unlawful procedure or failed to follow a prescribed process. However, a harmless procedural error may not serve as a basis for the reversal of a land use decision. RCW 36.70C.130(1)(a).

The KCC requires the hearing examiner to issue a written order at the conclusion of contested case proceedings. The order must contain findings and conclusions based on the record including:

1. For each alleged violation of the city code, a statement indicating whether the violation has been found committed or not committed;

2. For violations found committed, the monetary penalties and costs being assessed pursuant to this chapter;

3. For violations found committed, any required corrective actions;

4. For violations found committed, a finding that abatement of the violations by the city is authorized, at the expense of the person responsible for the violations; and

5. A statement notifying the person responsible for the violation that he or she is subject to additional civil and/or criminal penalties if any violation that was the subject of the hearing has not been corrected or abated.[10]

The Bergs are correct that the hearing examiner's findings of fact are minimal, but they are not so incomplete that they prevent meaningful judicial review. See, e.g., Tugwell v. Kittitas County, 90 Wn. App. 1, 14, 951 P.2d 272 (1997). The decision contains sufficient findings. The findings meet the minimum requirements of KCC 1.04.160 by confirming that a code violation was committed, setting forth the monetary penalty and costs, identifying corrective actions, authorizing abatement, and notifying the Bergs that they will be subject to additional penalties if the code violations are not cured. Further, the combination of the notice of violation and correction notice, along with the finding that the Bergs did not present credible evidence to the contrary, "addressed and resolved the factual issue[s]" and resolved the "major issues involved." Tugwell, 90 Wn. App. at 14. While the hearing examiner did not expressly state that the decision incorporated the notice of violation by reference, it is clear that this was the intent. Any procedural error was harmless. RCW 36.70C.130(1)(a).

III.

A.

A legal nonconforming use is a use that "lawfully existed" before a change in zoning regulations and is allowed to continue even though it no longer complies with current zoning. Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998). While a property owner has a right to continue a protected legal

---

[10] KCC 1.04.160.

nonconforming use, there is no right to "significantly change, alter, extend or enlarge the existing use. <u>Rhod-A-Zalea</u>, 136 Wn.2d at 7. "Under Washington common law, nonconforming uses may be intensified, but not expanded." <u>McGuire</u>, 144 Wn.2d at 649. Intensification of a nonconforming use is "permissible . . . where the nature and character of the use is unchanged and substantially the same facilities are used." <u>Keller v. City of Bellingham</u>, 92 Wn.2d 726, 730, 600 P.2d 1276 (1979).

The Washington State Legislature "has deferred to local governments to seek solutions to the nonconforming use problem according to local circumstances." <u>Rhod-A-Zalea</u>, 136 Wn.2d at 7. As a result, "local governments are free to preserve, limit, or terminate nonconforming uses subject only to the broad limits of applicable zoning enabling acts and the constitution." <u>Rhod-A-Zalea</u>, 136 Wn.2d at 7.

Consistent with Washington law, the City adopted nonconforming use regulations. The City defines a nonconforming use as:

> the use of land, a building, or a structure lawfully existing prior to the effective date of this title or subsequent amendments thereto, which does not conform with the use regulations of the district in which it is located on the effective date of such use regulations.[11]

The KCC prohibits the expansion <u>or intensification</u> of conforming uses unless the property owner first obtains a CUP:

> <u>No existing building, structure, or land devoted to a nonconforming use shall be expanded, enlarged, extended, reconstructed, intensified, or structurally altered</u> unless the use thereof is changed to a use permitted in the district in which such building, structure, or land is located except as follows: When authorized by conditional use permit, a nonconforming use

---

[11] KCC 15.02.285.

may be expanded, enlarged, extended, reconstructed, intensified, or structurally altered.[12]

## B.

The Bergs challenge both the legal analysis and factual basis for the hearing examiner's decision confirming they had violated the KCC by expanding a legal nonconforming use. The Bergs first contend that the hearing examiner erred in defining the scope of their nonconforming use. The Bergs rely on the definition of the general term "use" in KCC 15.02.532. Because a "use" is defined as "an activity for which land or premises or a building thereon is designed, arranged, or intended," the Bergs maintain that the City must take into account their intended use of the property.

This argument ignores that the zoning code has distinct definitions for "use" and "nonconforming use." As set out above, a "nonconforming use" is limited to "the use of land, a building, or a structure lawfully existing prior to the effective date of this title." KCC 15.02.285 (emphasis added). Giving due deference to the City's construction of its code, it is clear that by including separate definitions for "nonconforming use" and "use" the City intended to treat nonconforming uses differently than other uses. Ford Motor Co., 160 Wn.2d at 42.

Further, nonconforming uses are uniformly disfavored by courts and local governments as they limit the effectiveness of land use controls, imperil the success of community plans, and injure property values. Rhod-A-Zalea, 136 Wn.2d at 8-10;

---

12 KCC 15.08.100(C)(2) (emphasis added). The Bergs cite Kitsap County v. Kitsap Rifle and Revolver Club, 184 Wn. App. 252, 268, 337 P.3d 328 (2014), review denied, 183 Wn.2d 1008, 352 P.3d 187 (2015) for the proposition that intensification of nonconforming uses is generally allowed. The Bergs ignore, however, that the City, unlike Kitsap County, expressly prohibits the intensification of nonconforming uses. Compare KCC 15.08.100(C)(2) with Kitsap County Code 17.460.020(C). Kitsap County, 184 Wn. App. at 270.

<u>McMilian</u>, 161 Wn. App. at 591. As the Supreme Court explained in <u>Anderson v. Island County</u>:

> The use of property must actually be established prior to the adoption of the zoning ordinance to qualify as a nonconforming use thereafter. It is almost universally held that the mere purchase of property and occupation thereof are not sufficient factors, either severally or jointly, to establish an existing nonconforming use, and a vested right to a nonconforming use cannot exist unless the particular use in question is in fact established prior to the enactment of the zoning ordinance. "Before a supposed non-conforming use may be protected, it must exist somewhere outside the property owner's mind." <u>Therefore, mere intention or contemplation of an eventual use of land is insufficient to establish an existing use for protection as a nonconforming use following passage of a zoning ordinance.</u>

<u>Anderson v. Island County.</u>, 81 Wn.2d 312, 321-22, 501 P.2d 594 (1972) (emphasis added) (internal citations omitted) (quoting <u>Cook v. Bensalem Twp. Zoning Bd. of Adjustment</u>, 413 Pa. 175, 196 A.2d 327, 330 (1963)).

Reliance on a landowner's intent contradicts the rules and policies meant to limit nonconforming uses. The hearing examiner did not err in finding that the Bergs' intended use before the zoning enactment was not sufficient to create legal nonconforming use.

## C.

The Bergs also challenge the sufficiency of the evidence asserting that they submitted substantial evidence that the legal nonconforming use was <u>not</u> expanded. The standard of review, however, is not whether the Bergs submitted substantial evidence contrary to the hearing examiner's decision. Instead, the Bergs bear the burden of showing the "land use decision is not supported by evidence that is substantial." RCW 36.70C.130(c); <u>McGuire</u>, 144 Wn.2d at 652. Since the hearing

examiner found that the nonconforming use had expanded, the Bergs have the burden to demonstrate that the record is void of supporting substantial evidence.

The parties may establish use by comparing the scope of the prior and current uses. Johnson v. City of Seattle, 184 Wn. App. 8, 14-15, 335 P.3d 1027 (2014). King County zoned the Shady Park property as residential in 1958.[13] The property remained under residential zoning through the City's annexation in 1996. The auto repair shop and grocery store were allowed to continue on the property as legal nonconforming uses because they were legally established on the land before the land was zoned residential. The rest of the property was restricted to uses permitted in residential zones. After the property was annexed in 1996 and rezoned to NCC, the grocery store became an allowed use. The auto repair shop and the associated outdoor storage were allowed to continue as legal nonconforming uses because they existed at the time of the original zoning. The City limited the outdoor storage to the area illustrated by the line of vehicles stored behind the grocery store, and limited the auto repair shop as shown on the 1990 to 1999 aerial photos.

At the time the property was annexed in 1996, the majority of the undeveloped area consisted of trees and bushes with a narrow portion directly outside the existing businesses being used for vehicle storage. By 2002, Spencer began clearing away the vegetation and parking vehicles throughout the rest of the property. Over time the property began filling up with vehicles and the use changed from vehicles linked to the auto repair shop to a full storage business. This continued after the Bergs purchased the land. The record clearly demonstrates an expansion and intensification of the use

---

[13] Both parties stipulate that there may have been a break in zoning at this time.

as it changed from auto repair shop storage to a separate storage business. The hearing examiner's decision is supported by substantial evidence.[14]

IV.

The Bergs also contend that the hearing examiner made several erroneous interpretations of law including: failing to indicate whether a code violation was committed, shifting the burden of proof, and basing part of the decision on the Bergs' failure to reach a settlement with the City. Each argument fails.

A.

The KCC requires the hearing examiner's written order to include a "statement indicating whether the violation has been found committed or not committed." KCC 1.04.060. The Bergs argue that the hearing examiner erred in failing to cite the three provisions of the KCC that that the City claimed they violated. The Bergs ignore, however, that the decision expressly concludes that "the Bergs violated the Kent City Code as set out in the Notice of Violation."[15] Because the notice of violation and correction notice clearly set out the code provisions the City accused the Bergs of violating, the hearing examiner's conclusion was not erroneous.[16]

---

[14] The Bergs argue that the City acquiesced in their expansion of the storage after the area was annexed in 1996. Their argument fails. Any failure by the City to enforce its zoning code or any representations made that the uses were legal does not constitute approval. Miller v. City of Bainbridge Island, 111 Wn. App. 152, 165, 43 P.3d 1250 (2002). The KCC specifically prohibits expansion of a legal nonconforming use except "when authorized by conditional use permit." KCC 15.08.100(C)(2). Because neither the Bergs nor their predecessors obtained a CUP prior to expanding and intensifying the outdoor storage, the expansion violated the City code.

[15] CAR at 985.

[16] The Bergs also argue that the hearing examiner improperly cited to the King County code instead of the KCC in finding of fact 5. But read in context this was nothing more than a scrivener's error. Conclusion of law 1 confirms that "[t]he Bergs violated the Kent City Code as set out in the Notice of Violation." CAR at 985.

B.

The Bergs are correct that in contested hearings concerning code enforcement, the KCC places the initial burden on the City to prove "by a preponderance of the evidence, that a violation has occurred." KCC 1.04.150(A). But once the City meets its initial burden of showing that a violation exists, the burden shifts to the landowner to establish that the nonconforming use was lawfully established prior to adoption of contrary zoning and that the use was never abandoned or discontinued. King County Dep't of Dev. And Envtl. Servs. v. King County, 177 Wn.2d 636, 643, 305 P.3d 490 (2013); McMilian v. King County, 161 Wn. App. 581, 591, 255 P.3d 739 (2011).

The City met its initial burden by demonstrating that the entire site was being used for outdoor storage—a use prohibited in the NCC zone. At that point, the burden shifted to the Bergs to demonstrate that the entire undeveloped portion of their land was protected legal nonconforming use. McMilian, 161 Wn. App. at 591. The hearing examiner applied the correct burden of proof.

C.

The Bergs argue that the hearing examiner improperly based his decision in part on the Bergs' failure to reach a settlement with the City. This argument is based on finding of fact 4 which states "[The Bergs] were notified of and were given several opportunities to correct the violations and/or work with the City of Kent to settle the dispute, which did not occur."[17] This statement, which is supported by the record, is an acknowledgement that, consistent with due process, the City provided the Bergs with

---

[17] CAR at 984.

several warnings and opportunities to cure the code violation prior to issuing the 2012 NOV. The hearing examiner did not err in making this finding.

V.

The Bergs contend, pursuant to RCW 36.70C.130(1)(f), that their constitutional rights were violated in the process of limiting their use of the land for storage. A "vested right to a nonconforming use cannot exist unless the particular use in question is in fact established prior to the enactment of the zoning ordinance." Anderson, 81 Wn.2d at 321. Mere contemplated or intended use prior to the passage of a contrary zoning ordinance does not create an existing right that implicates due process concerns. McMilian, 161 Wn. App. at 593; see Anderson, 81 Wn.2d at 321-22.

VI.

Over two months after filing their initial appeal, the Bergs filed a CR 60 motion with the superior court seeking relief from the final judgment for "'excusable neglect or irregularity,'" "'newly discovered evidence,'" "'misrepresentation or other misconduct of an adverse party,'" or for manifest injustice.[18] The primary basis of the Bergs' motion was the "newly discovered" testimony of Brian Swanberg, a former City inspector.

A trial court's decision whether to vacate a judgment or order under CR 60 is reviewed for abuse of discretion. Shaw v. City of Des Moines, 109 Wn. App. 896, 900-01, 37 P.3d 1255 (2002). The decision will not be overturned on appeal unless it plainly appears that the trial court exercised its discretion on untenable grounds or for untenable reasons. Shaw, 109 Wn. App. at 900-01.

---

[18] CP at 702-15 (quoting CR 60).

Here, the superior court reviewed the legal arguments, considered the evidence, and carefully explained its analysis and decision in its oral ruling. The superior court's reasons included: (1) the City did not conceal the identity of Swanberg—the Bergs were informed during the hearing process that Swanberg was retired, that the City had no plans to call him as a witness, and that the Bergs could issue a subpoena for his attendance; (2) Swanberg was easily located by either an internet search or private locator service; and (3) that there was no misconduct on the part of the City—the City was not required to provide the Bergs with contact information for the witness or instruct them on how to file a subpoena. The superior court did not abuse its discretion in denying the Bergs' CR 60 motion.

VII.

As the prevailing party, the City is entitled to attorney fees on appeal pursuant to RCW 4.84.370(2). The City was the prevailing party on the merits at the trial court and on appeal. Durland v. San Juan County, 182 Wn.2d 55, 78-79, 340 P.3d 191 (2014); Habitat Watch v. Skagit County, 155 Wn.2d 397, 413, 120 P.3d 56 (2005).

Affirmed.

_____

WE CONCUR:

_____       _____

-18-