IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RANDALL AND DENISE OLSEN, | ) | |
| Husband and wife, | ) | No. 39177-9-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CHELAN COUNTY, a Washington | ) | |
| municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Randall and Denise Olsen applied to Chelan County for a permit for their short-term rental (STR) located in the City of Wenatchee. The county denied their application, concluding that the Olsens' STR violated Wenatchee's zoning ordinances and therefore did not qualify as a nonconforming use. The Olsens appealed the denial to the hearing examiner, and it was affirmed. The Olsens appeal to this court, arguing that they qualify to receive a nonconforming use permit and requesting that we order the

county to issue the permit.  We disagree with the Olsens and affirm the denial of the permit.

## I.    FACTS

The Olsens purchased property (Property) in 2019 located in the city of Wenatchee's urban growth area (UGA), which was located in Chelan County.  The Property was situated in a zoning district where STRs[1] were not allowed under Wenatchee's zoning regulations.  Nevertheless, the Olsens started renting out the Property as an STR beginning in July 2019.

In September 2021, Chelan County adopted ordinances regarding STRs, codified in Chelan County Code 11.88.290 (STR Code).  CCC 11.88.290(2)(C)(iv)(a).  The purpose of the STR Code was to protect year-round residents' ability to enjoy their neighborhoods and to ensure continued access to affordable housing.  CCC 11.88.290(1)(C), (D)(ii).  The STR Code contained provisions allowing for qualifying nonconforming properties operated as STRs to continue to operate provided they meet certain requirements.  CCC 11.88.290(2)(E).  The STR Code also expressly adopted the Wenatchee's "land use regulations, development standards and land use designations" as

---

[1] The term STR is from the Chelan County Code.  Wenatchee City Code refers to STRs as "Transient Rentals."  *See* Wenatchee City Code 10.08.135.  For the purposes of this appeal, the parties do not argue there is any significant difference between the two terms.

they applied to STRs, along with the regulations of other cities located within the county.

CCC 11.88.290(2)(C)(iv).

The Olsens applied for an existing nonconforming STR permit for the Property

under the STR Code.  Their application was denied.

The Olsens appealed the denial to the Chelan County Hearing Examiner.  Before

the hearing examiner, Denise Olsen testified that both her real estate agent and her

bookkeeper told her that she would be able to operate the Property as an STR.  She also

said that she had called Wenatchee and they had confirmed the same.

The hearing examiner determined that the use of the Property as an STR "was a

prohibited use by the City of Wenatchee, and was [therefore] a prohibited use under the

Chelan County Code [sic]."  Clerk's Papers at 12.  Accordingly, the hearing examiner

affirmed the denial of the Olsens' application.  The Olsens then appealed the decision to

the superior court, which transferred the case to this court.[2]

## II.     ANALYSIS

### A.  LUPA STANDARD OF REVIEW

In Washington, the Land Use Petition Act (LUPA), ch. 36.70C RCW, governs

"judicial review of land use decisions made by local jurisdictions."  RCW 36.70C.010.

On appeal, we stand in the same position as the superior court and limit our review to the

---

[2] Although the transfer is not a part of the record, it is indicated in ACORDS.

record that was before the hearing examiner. *Pinecrest Homeowners Ass'n v. Cloninger & Assocs.*, 151 Wn.2d 279, 288, 87 P.3d 1176 (2004). The party seeking relief bears the burden of demonstrating that one of six grounds are met:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1); *see also Pinecrest Homeowners Ass'n*, 151 Wn.2d at 288.

The standards in subsections (a), (b), (e), and (f) are questions of law reviewed de novo. *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006).

4

Subsection (c) requires a factual determination that we review for substantial evidence. *Id.* Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of an asserted fact. *Id.* "Our deferential review requires us to consider all of the evidence and reasonable inferences in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority." *Id.*

Finally, a "clearly erroneous" determination under (d) requires us to apply the law to facts. *Id.* It requires us to make a determination of whether we are "left with a definite and firm conviction that a mistake has been committed" while deferring to the hearing examiner's factual determinations. *Id.*

### B. NONCONFORMING USE ARGUMENT

The Olsens argue that the hearing examiner erred in not finding that the Property met the requirements for nonconforming use under the STR Code. We disagree.

Statutory interpretation is a question of law that is reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. We may look at the statute in question along with related statutes to discern the plain meaning of a statute. *Id.* at 10, 12. In doing so, we avoid interpretations that would lead to an absurd result or render parts of the statute superfluous. *State v. Votava*, 149 Wn.2d 178, 186-87, 66 P.3d 1050 (2003).

Additionally, "[i]t is an axiom of statutory interpretation that where a term is defined we will use that definition." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005). "'When two statutes appear to conflict, every effort should be made to harmonize their respective provisions.'" *Leson v. State*, 72 Wn. App. 558, 563, 864 P.2d 384 (1993) (quoting *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992)).

Nonconforming use is a principle that finds its roots in common law. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 649, 30 P.3d 453 (2001). "'A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated.'" *Id.* at 648 (quoting *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998)).

The Chelan County Code, consistent with common law, defines "nonconforming" as "a lot, use, building or structure which was lawful prior to the adoption, revision or amendment of a zoning ordinance, but which fails by reason of such adoption, revision or amendment to conform to the current requirements of the zoning district." CCC 14.98.1300. Although the definition is contained in Title 14 of the code, while the STR Code is contained in Title 11, the stated purpose of chapter 14.98 is to provide definitions for terms used in several of the other titles, including Title 11. CCC 14.98.010.

The Olsens admit that they did not even purchase the Property until 2019, well after Wenatchee implemented zoning ordinances prohibiting STRs in the district where the property was located. And they have not appealed the hearing examiner's decision that the STR was operated in violation of Wenatchee ordinances. However, the Olsens argue that under the STR Code, the Property qualified as a nonconforming use because it met the seven requirements provided under CCC 11.88.290(2)(E)(i). The provision states that an STR "shall be considered lawfully established and existing and allowed to continue to operate as a legally nonconforming use" if the owner demonstrates that seven requirements are met. CCC 11.88.290(2)(E)(i).

The Olsens maintain that since the provision does not require "nonconforming" use prior to the adoption of the STR Code, such a requirement does not exist. However, this argument ignores the fact that the code defines "nonconforming" to mean a use that "was lawful prior to the adoption" of the zoning ordinance. CCC 14.98.1300. It is evident from the language of the provision, when read in conjunction with the definition contained in Title 14, that it was not intended to change the definition of nonconforming. Rather, because Title 14 defines the term "nonconforming," subsection (2)(E)(i) is stating that for an STR to be *legally* nonconforming, it must not only meet the definition of nonconforming in Title 14, but must also meet the seven other requirements laid out in CCC 11.88.290(2)(E)(i).

Moreover, the STR code explicitly states that a property operating in violation of existing city UGA regulations, such as Wenatchee's zoning ordinances, "has no legal existing nonconforming status as a short-term rental." CCC 11.88.290(2)(C)(iv)(a)(1). Here, the use of the Property as an STR was unlawful under Wenatchee's existing UGA regulations prior to Chelan County's adoption of the STR Code. Regardless of whether it meets the seven requirements in CCC 11.88.290(2)(E)(i), it does not meet the definition of "nonconforming" under the code and therefore cannot be nonconforming under either CCC 11.88.290(2)(E)(i) or CCC 11.88.290(2)(C)(iv)(a)(1).

In their statement of the case, the Olsens also appear to argue that the Property qualifies as nonconforming under the STR code because it was located in a zone that "does not expressly allow new short-term rental units," and the code states that STRs located in such zones will be considered nonconforming. CCC 11.88.290(2)(E)(ii)(a)(2). The Olsens contend that this should be read to mean that the Property was nonconforming because the Wenatchee code does not expressly allow STRs.

The provision is admittedly confusing. However, the Olsens urge an interpretation that would lead to an absurd result and produce conflicting provisions within the STR Code. It would mean that where a city has expressly disallowed STRs in a zone that also falls under county regulation, any existing STRs would be deemed nonconforming. However, as explained already, the STR Code states that STRs that are in violation of existing regulations have "no legal existing nonconforming status as a short-term rental."

8

CCC 11.88.290(2)(C)(iv)(a)(1).  Moreover, the STR Code expressly adopted Wenatchee's already-existing zoning regulations that prohibited STRs in its UGA.

The Wenatchee code expressly disallows STRs in the area in which the Property is located, and therefore, the Property was not nonconforming under the Wenatchee code. Additionally, Title 10 of the Chelan County Code explicitly adopted Wenatchee's "land use regulations, development standards and land use designations, as they apply to the unincorporated city of Wenatchee urban growth area" in 2016, three years prior to when the Olsens began operating the Property as an STR.  CCC 10.14.020.  To read the STR Code to now provide otherwise would result in STRs operated in violation of existing city codes gaining "nonconforming" status under the STR Code.  This result would be contrary to the STR Code's purpose to protect year-round residents' enjoyment by minimizing the detrimental impact of excessive STRs.  Additionally, it would result in conflicts within the Chelan County Code itself and between the STR Code and local codes.  As the Chelan County Code expressly adopted existing city codes, this interpretation also clearly runs contrary to the intent of the drafters of the STR Code.  We decline such an interpretation and disagree with the Olsens' argument.

The Olsens also maintain that the hearing examiner should have found that the Property fell under the "safe harbor provision" contained in the code, which states:

9

> Existing *nonconforming* short-term rentals of any tier level are not subject to the limitations in this subsection (2)(C) provided they comply with all the provisions of subsection (2)(E) of this section and any other applicable provisions.

CCC 11.88.290(2)(C)(v) (emphasis added).

The flaw in this argument is the same as that of the argument related to subsection (2)(E)(i)—the property must first be shown to be "nonconforming" to fall under this provision. As explained already, the Property does not meet the definition of nonconforming under either the STR Code or under common law. Thus, we disagree with this argument.

We want to clarify that we are not interpreting the STR Code to say that all prior STRs in Chelan County do not qualify as legally nonconforming if they were not explicitly authorized. In cases where an STR is outside of a city's UGA and just under county zoning ordinances, it may well qualify as nonconforming. And even where an STR is in a city's UGA but STRs were not explicitly prohibited by city or county zoning regulations, it may also qualify as nonconforming. However, in this case, the Property was located within an UGA where STRs were not permitted. Thus, it did not qualify as nonconforming.

Thus, we determine that the hearing examiner did not err in determining that the Property need not qualify as nonconforming and therefore denying the Olsens' request for a permit. Accordingly, we affirm.[3]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Siddoway, J.

---

[3] For the first time in their reply brief, the Olsens argue that their use of the Property as an STR is also permitted under the vested rights doctrine. We decline to address this argument. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").